EDWARDS, Judge.
The defendant, Ventech Equipment, Inc., appeals a judgment rendered against it, in the full sum of $96,000 plus statutory interest, penalties and attorneys fees, representing unremitted sales tax which the trial court found was owed by it to the plaintiff, Department of Revenue and Taxation. For the following reasons, we affirm the judgment of the trial court.
By way of contract, dated November 12, 1982, Ventech sold part of a petroleum refinery, a No. 2 Platforming Dubutanizer (hereinafter referred to as platforming unit), to GHR Energy Corporation. Subse *177 quently, the Department of Revenue and Taxation performed a field audit examination and assessed a $96,000 sales tax on the sale, and filed a petition in district court to recover the tax. The trial court found that the assessment was valid, and rendered judgment against Ventech ordering it to pay the department the full sum of $96,000 plus statutory interest, penalties and attorneys fees. The trial court based its judgment on two findings of fact: that the unit sold was a “movable” and thereby subject to the Louisiana sales tax laws, and also that the purchase price for the unit included an amount for sales tax which was collected by Ventech, thereby giving rise to its legal obligation to remit a tax to the State of Louisiana. Ventech assigns error to each of these findings of fact. We find that the second finding of fact made by the trial court was correct as well as disposi-tive of the issue at hand. Therefore, we pretermit discussion of the first assignment of error.
In Sabine Pipe & Supply Company v. McNamara, 411 So.2d 1167, 1169 (La.App. 1st Cir.,) cert. denied, 414 So.2d 1254 (La.1982), we held that since LSA-R.S. 47:306 and 47:318 require that taxes collected from purchasers must be remitted to the Secretary [Department of Revenue and Taxation], then once a seller collected a tax, the State can compel it to remit the tax to Louisiana. In Sabine, the seller admittedly withheld and collected amounts equivalent to Louisiana sales or use tax from its Louisiana customers, and was thereby ordered to remit such taxes to the state. In the instant case, Ventech denies that it collected a sales tax from its purchaser. However, we have reviewed the evidence and find that the trial court’s finding that such tax was collected by Ventech is amply supported by the record and documents.
The pertinent evidence consists of two separate documents, each entitled “SALES AGREEMENT PLATFORMER UNIT.” The first, accompanied by a transmittal letter dated October 1, 1982, is a proposed draft (hereinafter referred to as draft) of an offer outlining the terms and conditions of the sale, executed by the buyer, GHR. This agreement was never signed by Ven-tech. The’ second document, dated November 12, 1982, is the final contract (hereinafter referred to as contract) which perfected the sale of the unit. The purchase price for the unit in both of these documents is the same; however, the language pertaining to the purchase price is slightly varied.
The draft provided as follows:
1. Price and Terms. PURCHASER shall pay the sum of THREE MILLION TWO HUNDRED THOUSAND DOLLARS ($3,200,000), plus applicable taxes as provided in Exhibit “B,” attached hereto and made a part hereof.
Exhibit “B” is a payment schedule, with a heading which reads: TOTAL PURCHASE PRICE IS $3,360,000. Following this heading is a list of eight payments made, total-ling $900,000, the balance of the purchase price, listed at $2,360,000, followed by a paragraph of terms and conditions for payment of the balance, and the following: $3,360,000 Total, including $160,000 for Sales Tax.[1]
The contract provided as follows:
1. Price and Terms. The total purchase price, and payment therefore, of the GOODS shall be THREE MILLION THREE HUNDRED SIXTY THOUSAND DOLLARS ($3,360,000), including sales taxes, as provided in Exhibit “B,” attached hereto and made a part hereof.
Exhibit “B” is a payment schedule which provides at the top: Total Purchase Price = $3,360,000 (including sales tax). Following, is a list of payments made, payments owed and provisions regarding the mode of payment for the balance.
Both documents clearly reflect the inclusion of sales tax as part of the negotiated purchase price, yet Ventech contends that it neither charged nor received sales tax on the transaction. Mr. Bill Stanley, vice-president of Ventech, testified that the pro *178 posed draft was not accepted by Ventech because during the negotiations, Ventech reached an internal conclusion that the sale was not a taxable transaction. His explanation for why the contract still stated “including sales tax” was that it “was meant as a hold harmless against Good-hope bearing any tax.” However, the total purchase price in both documents is, nevertheless, the same. When asked by the trial court why the purchase price was not reduced by the $160,000 which had been previously negotiated as sales tax, Mr. Stanley explained that the same price now covered additional work which had not been in the proposed draft.
In its reasons for judgment, the trial court remarked, “But the price coincidentally changed a hundred and sixty thousand, the amount of the two taxes that the parties had at least agreed on.... [tjhat’s just too much of a coincidence for me to ignore.” Based on the evidence in this record, and the clear wording of the contract, we find no abuse of the trial court’s discretion. Accordingly, we affirm the judgment of the trial court. Ventech is assessed all costs of this appeal.
AFFIRMED.

. The scheduled payments were listed as lump sums and did not specify an allotment for sales tax. However, Mr. Winn, a field agent with the Department of Revenue, testified that typically, when a contract provides for progress payments, the sales tax is specified in the contract (as was done in this case), but not necessarily broken out of each scheduled payment.