931 So.2d 382 (2006)
AWC, INC.
v.
CSF CONSTRUCTION, INC.
No. 2005-CA-0865.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 2006.
*383 Travis B. Wilkinson, Kantrow, Spaht, Weaver & Blitzer A PLC, Baton Rouge, Counsel for Plaintiff/Appellant.
W. Eric Lundin, III, Belle Chasse, Counsel for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III and Judge ROLAND L. BELSOME).
JOAN BERNARD ARMSTRONG, Chief Judge.
The plaintiff-appellant, AWC, Inc., appeals a judgment dismissing its claim against the defendant-appellee, CSF Construction, Inc., for sales tax allegedly due in connection with a sale by AWC to CSF.
AWC alleges in its petition that it has remitted the sales tax to the collector of revenue and that CSF refuses to pay the sales tax which is due. CSF's position is that the price quoted by AWC was inclusive of sales tax. AWC contends otherwise. While the parties cannot agree on what they agreed to as who should bear the cost of paying the sales taxes, neither party contends that this disagreement rises *384 to the level of a vice of consent sufficient to warrant undoing the sale.
In support of its conclusion that "the evidence in this matter indicates that the price negotiated by the Parties included sales tax," the trial court in its written reasons for judgment states that:
The purchase order issued by the purchaser indicates that they contemplated that sales tax would be the responsibility of the seller  AWC, and AWC remitted the sales tax due on the purchase to the Department of Revenue.
However, the fact that the seller remits the sales tax to the collector of revenue is customary practice  it is not evidence that it has agreed to assume the cost of that tax. In other words, when one purchases something it is customary for the seller to remit the tax. It is such a fact of everyday life that this Court may take judicial notice of the fact that it is the seller and not the purchaser who customarily remits the sales tax.
McNamara v. Ventech Equipment, Inc., 613 So.2d 176 (La.App. 1 Cir.1992), does not imply "that if the seller does not withhold and collect the sales tax due the state cannot compel the seller to remit the tax." La. R.S. 47:303 A(1) states that the sales tax "shall be collectible from . . . [the dealer]..." "Dealer" is defined broadly in La. R.S. 47:301(4) to include sellers of tangible personal property, including the items sold by AWC to CSF in the instant case. The Sales tax statutes, La. R.S. 47:301 et seq., state clearly and unambiguously that it is the responsibility of the seller to remit the taxes and this obligation exists regardless of whether the seller collects the taxes from the purchaser. The seller's obligation to remit the taxes is separate from the purchaser's obligation to pay the tax. In other words, the seller must remit the tax to the State even in those instances where the purchaser fails in its obligation to pay the tax to the seller. Thus, the legal requirement that the seller remit the tax is not predicated upon it first having collected the tax from the purchaser.
Therefore, we agree with AWC that the fact that it remitted the sales tax to the state was not an acknowledgement by AWC that it had agreed to assume the cost of the tax as between it and CSF. But it also does not mean that CSF agreed to pay the tax, either. It is irrelevant to the proof of either party's case.
One of the main documents in the record is the price quote for certain electrical equipment that AWC furnished to CSF. It makes no mention of sales tax. Mr. David Honeycutt, the Chief Financial Officer of AWC, testified that: "It is standard in the industry not to include sales taxes."
CSF argues that when the price quote from AWC employed the language, "[t]he price below is lump sum," it meant that the price was inclusive of sales tax. However, La. C.C. art. 2458 indicates that a "lump" sale refers to the sale of multiple items such as occurred in the instant case. There is no authority to suggest that the use of the term "lump sum" intended any reference to sales taxes.
AWC argues that the purpose of the quoted price was "not to collect payment but simply to negotiate what the price would be." AWC makes the point that: "No negotiation is needed for the amount of sales tax, as it is set as a percentage of the sale price by law." AWC sums up this line of argument by urging that:
[C]ommon practice supports that a quoted price does not include sales tax.... For example, when a consumer purchases items at a grocery store, restaurant, or car dealership, etc., the price that is quoted for those items does not include sales tax. It is understood that *385 sales tax is due in addition to the "sticker price."
If there were no other evidence in the record we would find AWC's argument persuasive. However, CSF counters that in response to AWC's price quote it issued two "Purchase Orders," one dated 2-06-03 and the other dated April 24, 2003. The face of both Purchase Orders clearly state in upper case letters:
THIS PURCHASE ORDER SUBJECT TO TERMS AND CONDITIONS ON REVERSE.
Both Purchase Orders contain the identical language on the reverse, including paragraph # 21 shifting the responsibility for the payment of the sales tax to the seller, AWC:
Seller shall be responsible for payment of all applicable federal, state and local taxes resulting from all work performed or materials supplied by Seller including any subcontractors to Seller under this order, including but not limited to sales and use taxes, as well as for an[y] ad valorem taxes applicable to property used by Seller in performance of the order.
As the sale was confected in response to one or both of these Purchase Orders, paragraph # 21 would ordinarily be dispositive of the case and we could easily affirm the trial court based on finding that while the common practice is for the purchaser to pay the sales tax on top of the quoted price, in this instance the parties elected to vary that practice by contract as they are free to do. La. C.C. art.1971. However, AWC counters that the only Purchase Order it received was a faxed copy of the April 24, 2003 purchase order, and that when CSF faxed them the Purchase Order, they faxed only the front page. They did not fax the reverse page containing paragraph # 21 shifting the sales tax burden to AWC. The fax cover sheet shows that only the cover sheet and the front page of the April 24, 2003, Purchase Order were faxed by CSF to AWC. CSF does not deny this.
AWC had no record of ever having received the Purchase Order dated 2-06-03, fax or otherwise. Jack Comeaux, the president of CSF, testified that he sent hard copies of both Purchase Orders to AWC but had no way of knowing if they were ever received. He also testified that a copy of the front page of the 2-06-03 was faxed to AWC. Later in his testimony he responded affirmatively when asked if he "faxed over just the front page of the purchase order," but he did not specify which purchase order. He never specifically testified to having faxed over the Purchase Order of April 24, 2003. However, as noted previously, the plaintiff acknowledges having received the faxed front page of the April 24, 2003 Purchase Order. The fax cover sheet confirms that only two pages were faxed, i.e., the fax cover sheet and the front page of the Purchase Order.
The written reasons state that AWC acknowledged receiving a faxed copy of the front page of the Purchase Order, presumably referring to the April 24, 2003 Purchase Order as it is the only one AWC acknowledged having received, but no reference is made in the written reasons to the April 24, 2003 Purchase Order. The only Purchase Order specifically referred to by date in the trial court's written reasons is the February 6, 2003 Purchase Order. The written reasons refer to the "Purchase Order" in the singular only. No mention is made in the written reasons of the fact that the record contains copies of Purchase Orders bearing two different dates.
AWC denied ever having received any form of the 2-06-03 Purchase Order fax or *386 otherwise. CSF contends that it sent AWC a hard copy showing paragraph # 21 on the reverse. AWC says it has no record of having received such a hard copy. However, for reasons hereinafter set forth we find that it makes no difference whether AWC ever received a hard copy of either Purchase Order.
The record copies of both Purchase Orders have signature lines for the signatures of representatives of both CSF and AWC, but there are no signatures. However, even if we assume that AWC never received the Purchase Order dated 2-06-03, in whole or in part, in any form, fax or otherwise, and that the only Purchase Order document it received was the faxed front page of the April 24, 2003 Purchase Order it acknowledges receiving, it does not change the outcome of this case. The receipt by AWC of the fax of front page of the Purchase Order of April 24, 2003 which refers to terms and conditions on the reverse is sufficient to put AWC on notice that there was a reverse page containing terms and conditions.
AWC does not argue that paragraph # 21 was not part of the original reverse of the Purchase Order  only that the reverse side of the Purchase Order was not transmitted with the fax. AWC should have inquired as to the nature of the terms and conditions referred to on the face of the document that it acknowledges having received by fax.
AWC sent an invoice to CSF dated 6/25/2003 which showed a line due of $7,203.00 for sales tax. It also included a freight charge of $2,500.00. CSF paid the entire invoice amount of $92,393.00 including the freight charge, less the $7,203.00 charge for taxes, in spite of the fact that freight was not included in the Purchase Order figure. Because CSF paid the freight charges, despite the fact that they did not appear on either of CSF's Purchase Orders, AWC contends that CSF should be equally bound to pay the sales tax which also did not appear on the Purchase Order. However, this can be explained by the fact that there was no clause on the reverse of the CSF purchase order regarding the responsibility for payment of shipping charges, i.e., there was no clause concerning shipping costs comparable to paragraph # 21 which shifted the sales tax burden from CSF to AWC. Therefore, the payment by CSF of shipping charges is not evidence that it agreed to pay sales taxes.
The Purchase Order clearly makes reference to terms and conditions to be found on the back of the document. L & A Contracting Co., Inc. v. Ram Indus. Coatings, Inc., 99-0354, p. 18 (La.App. 1 Cir. 6/23/00), 762 So.2d 1223, 1234, sets forth the relevant general rule of contract law:
As a general rule of contract law, separate documents may be incorporated into a contract by attachment or reference thereto. Russellville Steel Co., Inc. v. A & R Excavating, Inc., 624 So.2d 11, 13 (La.App. 5th Cir.1993).
Therefore, it is accepted practice to incorporate by reference additional terms not shown on the face of the document. In Action Finance Corp. v. Nichols, 180 So.2d 81, 82 (La.App. 2 Cir.1965), the court was faced with a document containing language legally identical to that found on the face of the Purchase Order in the instant case:
The buyer agrees that the terms and conditions on the reverse side hereof are hereby expressly incorporated herein by reference and constitute a part of this contract.
The court interpreted this language as follows:
Moreover, if it may be said that the recitals on the reverse side of the instrument from that on which the signatures *387 appear constitutes a separate document, the jurisprudence is clear that documents may be incorporated in contracts by attachment or reference thereto. Indeed, this practice has been so universal that it has apparently seldom been drawn into question. The rule has been applied to covenants running with land, specifications in building contracts, and various other matters not contained on the face of contracts themselves.
Id., at 83.
It is clear from these cases that the reference on the face of the Purchase Order to conditions to be found on the reverse is accepted practice and sufficient to put AWC on notice that CSF intended to incorporate terms and conditions into the Purchase Order in addition to those shown on the face of the document. It then became incumbent upon AWC to inquire further as to the nature of those terms and conditions, including paragraph # 21 shifting the burden of paying the sales tax from CSF to AWC. Therefore, we conclude that as between the parties, CSF could reasonably expect AWC to inquire as to the nature of the terms intended to appear on the reverse if it had any questions concerning the reference to the reverse of the document, and the burden was on AWC to do so. Accordingly, we hold that AWC is bound by the terms and conditions referred to on the reverse of the Purchase Order, including paragraph # 21 shifting the burden of paying the sales taxes to AWC.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
BELSOME, J., concurs in the result.
BELSOME, J., Concurs in the Result.
This case should not stand for the proposition that when the purchaser is the unsophisticated party, there is a duty to examine terms not physically attached to the agreement. The two parties in this case were similarly situated businesses, and neither was substantially more sophisticated than the other regarding business matters. We have not created a duty on a purchaser to examine terms that were not physically attached to the agreement to sell. However, there was evidence in the record to establish that AWC actually received the terms contained in paragraph # 21. Therefore, I concur.