947 So.2d 740 (2006)
TOURO INFIRMARY
v.
SIZELER ARCHITECTS, a Professional Corporation.
Touro Infirmary
v.
Sizeler Architects, a Professional Corporation and I. William Sizeler, in His Individual Capacity, et al.
Nos. 2004-CA-2210, 2005-CA-1265.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2006.
Rehearing Denied February 15, 2007.
Opinion Dissenting From Denial of Rehearing February 15, 2007.
*741 James M. Garner, Timothy B. Francis, Martha Y. Curtis, Howard T. Boyd, III, Sharonda R. Williams, Sher Garner Cahill Richter Klein McAlister & Hilbert, L.L.C., New Orleans, LA, for Plaintiff/Appellee, Touro Infirmary.
W. Bartlett Ary, Thomas J. Eppling, Staines & Eppling, Metairie, LA, for Wolf-Gordon, Inc.
Frank A. Piccolo, Preis, Kraft & Roy, APLC, and David W. Leefe, David L. Reisman, Brian A. Jackson, Liskow & Lewis, New Orleans, LA, and Edwin G. Preis, Jr., Preis, Kraft & Roy, APLC, Lafayette, LA, and Elizabeth B. Wright, Peter D. Welin, Daniel M. Haymond, Andrew H. Cox, Jennifer Mingus Mountcastle, Thompson Hine LLP, Cleveland, OH, for Defendant/Appellants, Seabrook Wallcovering, Inc. and Omnova Solutions, Inc.
Lawrence J. Boasso, Waller & Associates, Metairie, LA, for New Orleans Metal Works, Inc.
Thomas P. Diaz, Liskow & Lewis, New Orleans, LA, for Muraspec, N.A., L.L.C.
Temple A. Stephens, Stephens & Grace, Metairie, LA, for Seabrook Wallcoverings, Inc.
David P. Salley, Salley, Hite, Rivera & Mercer, New Orleans, LA, for MDC Wallcoverings, Inc.
Thomas E. Loehn, Charles K. Chauvin, Boggs, Loehn & Rodrigue, Metairie, Louisiana, for Design Tex Group, Inc.; J.M. Lynne.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS SR., Judge ROLAND L. BELSOME).
Judge ROLAND L. BELSOME.
This case arises from the design and construction of the Woldenberg Nursing Home and Assisted Living Facility ("Facility") owned by Touro Infirmary ("Touro"). In July 2003, Touro discovered the presence of mold and mildew on the floors, walls, ceilings, and windows of the Facility. Touro alleges that repeated attempts to remediate the mold were unsuccessful.
Touro filed suit against Sizeler Architects on April 19, 2003 claiming damages for breach of contract and negligence for various alleged design and expenditure defects. Since that time, Touro has amended and supplemented its petition to include claims of breach of contract, negligence, redhibition, warranty and products liability against various manufacturers and distributors of vinyl wall covering.
On July 19, 2004, the trial court issued a written judgment granting Touro's partial motions for summary judgment against OMNOVA Solutions ("OMNOVA") on the issues of liability in redhibition and breach of express warranty. By written judgment dated March 7, 2005, the trial court granted Touro's partial motions for summary judgment against distributors; Muraspec, N.A., L.L.C. ("Muraspec"), MDC Wallcoverings ("MDC"), Seabrook Wallcoverings, Inc. ("Seabrook"), Design Tex Group, Inc. ("DesignTex"), and Wolf-Gordon, Inc. ("Wolf-Gordon") on the issue of liability in redhibition. The judgments were appealed and those appeals have been consolidated. New Orleans Metal Works ("NOMW") also seeks appellate review of the trial court's March 15, 2005 judgment denying its motion to stay, motion *742 to dismiss, and exception of arbitration.[1]
The judgments granting the partial summary judgments by the trial court contained a very basic final judgment certification designating the judgment as final. In R.J. Messinger, Inc. v. Rosenblum, 894 So.2d 1113 (La.03/02/05), the Supreme Court found that when the trial court does not provide reasons for the certification, the appellate court should conduct a de novo review of the record to determine if the certification was proper. The standard of review is whether the trial court abused its discretion. Id.
Messinger provided some factors that may be used in determining whether a partial summary judgment should be certified as appealable.[2] Upon a de novo review of the record in the instant case, we have determined that there is no just reason for delay. Therefore, there was no abuse of discretion on the part of the trial court in certifying the judgments for appeal.
The mover is entitled to judgment as a matter of law if adequate discovery reveals no genuine issues of material fact exist. La. C.C.P. art. 966(C)(1). Using the same criteria as the trial court, the appellate court reviews summary judgments de novo to determine if there is a genuine issue of material fact or if the mover is entitled to judgment as a matter of law. Champagne v. Ward, 03-3211 (La.1/19/05); 893 So.2d 773, citing Ocean Energy v. Plaquemines Parish Government, 04-0066 (La.7/6/04); 880 So.2d 1. The Supreme Court considers an issue to be genuine if reasonable persons could disagree while stating that a fact is material when its existence or nonexistence is relevant to the opposing party's cause of action or defense under the applicable theory of recovery. Smith v. Our Lady of the Lake Hosp., Inc., 639 So.2d 730, 751 (La.7/5/94).
REDHIBITORY DEFECT
On summary judgment, the trial court found that the vinyl wall covering was impermeable and therefore, redhibitorily defective. The Louisiana Civil Code defines redhibitory defect in article 2520, which states:
Warranty against redhibitory defects
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.

A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it *743 diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price. (emphasis added). La. C.C. art. 2520.
Touro claims that the impermeable nature of the wall covering renders it useless in a hot and humid environment like New Orleans. More specifically, Touro alleges that the vinyl wall covering exhibited a redhibitory defect when installed on the inside surface of exterior walls, trapping moisture and promoting the growth of mold and mildew.
A product must fail its intended purpose to be redhibitorily defective. see Benoit v. Ryan Chevrolet, 428 So.2d 489 (La.App. 2d Cir.1982). OMNOVA does not dispute the impermeable nature of the vinyl wall covering. OMNOVA maintains that the impermeable nature of the product goes to its intended use as a durable and easy to clean wall covering. The record contains an affidavit from experts, J. David Odom and George H. DuBose[3], supporting OMNOVA's contention that the impermeable nature of the wall covering does not render it useless, even for use on the interior of exterior walls in the Gulfsouth.
OMNOVA claims that the exterior walls of the Facility that experienced the growth of mold and mildew were compromised by excessive water intrusion due to faulty design and/or construction of the building. Touro has conceded such design and construction problems including improperly designed and installed windows, missing shims, improperly installed drip edges at windows, gas and cracks in the exterior facing of the building's walls that should have been repaired or caulked, roof leaks and condensation from heating and cooling lines. Furthermore, there was no mold or mildew growth on vinyl wall covering installed on the interior of exterior walls that were not compromised by such water intrusion.
Expert opinions[4] provided to the trial court acknowledge that with the water intrusion the Facility was going to have mold and mildew growth regardless of vinyl wall covering. Additionally, areas where vinyl wall covering was not used have experienced the growth of mold and mildew. Also, Touro's vice president, Frank Folino testified that there are many areas of the Facility where the vinyl wall covering is being used successfully. In reviewing the record as a whole we recognize the existence of genuine issues of material facts.
Accordingly, this Court must reverse the trial court's decision on redhibitory defect with respect to OMNOVA and the distributors; Muraspec, MDC, Seabrook, Design Tex, and Wolf-Gordon.
BREACH OF EXPRESS WARRANTY
An express warranty is one that is created by the explicit words of the seller. Black's Law Dictionary 1619 (8th ed.2004). OMNOVA, one of the manufacturers of the vinyl wall covering used at the Facility prints and distributes "Application Instructions" along with its vinyl wall covering. The Application Instructions include a Warranty, which provides:

*744 OMNOVA SOLUTIONS, INC., Wallcovering Unit, ("Manufacturer") warrants that for a period of five years from the installation of its commercial wallcovering products ("Products"), Products shall not separate from their backings, exhibit stains caused by bleeding of impurities or support the growth of mildew when Products are properly installed on a sound wall, adequately maintained and used under normal conditions.
Touro alleges that there was a breach of OMNOVA's express warranty since certain portions of the installed vinyl wall covering 1) separated from the wall; 2) exhibited stains; and 3) supported the growth of mold and/or mildew. These are conditions warranted against by OMNOVA, when its product is "properly installed on a sound wall".
Touro seeks to recover for OMNOVA's breach of its express warranty pursuant to Louisiana Civil Code article 2529. Touro contends that it is alleging breach of express warranty under Louisiana law of obligations opposed to the Louisiana Products Liability Act ("LPLA"). Article 2529 provides:
Thing not of the kind specified in the contract
When the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations.
La. C.C. art. 2529.
OMNOVA disputes Touro's assertion that the law of conventional obligations applies rather than the LPLA. OMNOVA argues that the LPLA provides the exclusive remedy for recovery against manufacturers of allegedly defective products. La. R.S.A. § 9:2800.52. Alternatively, OMNOVA challenges the notion that Touro can have a breach of contract claim without being privy to any contract with OMNOVA.
This Court recognizes that article 2529 gives rise to a cause of action against a seller, which OMNOVA arguably is, for the delivery of a product that is not the kind or quality represented by the seller. The "product" that is at issue is the vinyl wall covering but the seller is the manufacturer, which leads us back to the exclusivity of the LPLA. Courts have consistently held the LPLA subsumes all possible causes of action, with the exception of a claim in redhibition. Hence, the breach of express warranty is encompassed by the LPLA and is no longer viable as an independent theory of recovery against a manufacturer. La. R.S.A. 9:2800.54(B)(1-4) See also, Jefferson v. Lead Industries Assoc., Inc., 930 F.Supp. 241 (E.D.La.1996).
Touro also references § 16.26 of the La. Civil Law Treatise: Tort Law in its argument in favor of the contract-based breach of express warranty claim. The treatise section titled Express Warranty, states that "[t]he Act's express warranty theory of recovery is self-contained and distinct from the express warranty action found in the Civil Code."[5] However, the treatise goes on to provide that when the express warranty was made to a third party the claim must be derived solely from the provisions of the LPLA. Under the circumstances presented in this case, the distributor/installer would be the third party to whom the express warranty was made and thus, the claim is limited to the provisions of the LPLA.
Touro cites the 1972 opinion of Media Production Consultants, Inc. v. Mercedes-Benz *745 of North America, Inc., 262 La. 80, 262 So.2d 377 (5/1/72) in support of its breach of contract claim against OMNOVA. In Media Production, the Supreme Court found that the North American distributor of a vehicle was essentially the manufacturer of the vehicle so far as the consumer was concerned and there need not be a privity of contract between that distributor and the consumer for there to be a breach of implied warranty. Id. Based on the transcript of the hearing, the trial court also relied on the Media Production court's reasoning in granting Touro's partial motion for summary judgment on this issue.
The Media Production opinion was a pre-LPLA decision dealing with the breach of an implied warranty, essentially a redhibition claim, rather than a breach of express warranty. Although there is no case law directly on point, an interpretation of applicable case law consistently leads to a determination that Touro's express warranty claim must be brought under the LPLA.
Therefore, any claim of express warranty against OMNOVA is limited to the remedies provided for by the LPLA. For that reason the trial court's granting of Touro's partial motion for summary judgment against OMNOVA for breach of express warranty is hereby reversed. In light of this finding there is no need for this Court to address any other arguments raised by either party on the breach of express warranty.
NOMW'S EXCEPTION OF ARBITRATION
NOMW is a subcontractor who, pursuant to a subcontract agreement with the general contractor, Robins and Morton Group ("RMG"), purchased and installed interior finishes at the Facility. NOMW was named as a defendant by Touro in its Fourth Supplemental and Amending Petition filed on October 15, 2003. NOMW filed an answer and exception on January 12, 2004. At that time NOMW was the only subcontractor named as a defendant in the suit. NOMW's peremptory exception was based on no cause of action. The general contractor, RMG, and seven other subcontractors performing construction work at the facility were added as additional defendants in Touro's fifth amended petition filed October 18, 2004.
On December 8, 2004, RMG filed an exception of prematurity alleging that the general contract between Touro and RMG contained a mandatory arbitration clause. NOMW filed an exception of arbitration, motion to stay and motion to dismiss on December 8, 2004 asserting that its subcontract agreement with RMG incorporated the terms and conditions of the general contract, which contains the arbitration clause plead by the general contractor. On February 18, 2005 the trial court granted the exception of arbitration filed by the general contractor, RMG and denied the exception of arbitration filed by NOMW. NOMW is appealing that ruling.
NOMW contends that by way of the subcontract and purchase orders it is subject to the terms and conditions of the contract between the purchaser and the owner. Specifically, Section (18), which provides:
(18) In the event Purchaser is required by the terms of the General Contract to arbitrate any controversy with the Owner or with any other prime or subcontractor or supplier and such controversy involves, in whole or in part, the work or materials of Vendor, then Vendor agrees to participate in the prosecution or defense of such controversy in said arbitration and to be bound by the result thereof. Vendor shall not commence or maintain any action or proceeding against Purchaser for any damages resulting *746 from any default, breach or interference by the Owner or for extra work or by virtue of any deduction or refusal to pay by the Owner, except to the extent of the sum ultimately obtained from the Owner on account thereof by Purchaser.
Touro raises two arguments in its opposition to NOMW's request for arbitration. First, Touro insists that no enforceable arbitration agreement exists. Alternatively, Touro argues that even if a valid arbitration agreement exists, NOMW waived any right to arbitration to which it may have been entitled.
When addressing the issue of enforceable arbitration agreement we look to the language contained in the Purchase Order, Terms and Conditions.[6] The plain language of section (18) states that once the Purchaser, RMG[7], is required to arbitrate with the Owner, Touro, under the General Contract, then Vendor, NOMW, participates if the claim involves the work materials of the Vendor. NOMW also agrees to be bound by the result of the arbitration. Clearly, we have this exact scenario playing out. First, RMG has requested and been granted arbitration per the general contract and part of the work at issue includes the workmanship and material used by NOMW. We find that NOMW has a contractual right to participate in arbitration as long as the arbitration agreement between RMG and Touro stands.
Next, we must determine if NOMW waived its right to arbitration. Touro claims that a demand for arbitration should be raised through the dilatory exception of prematurity. Hence, just like a dilatory exception the demand for arbitration must be filed prior to or in the answer.
The following represents NOMW's participation in this matter: NOMW was named in this lawsuit on October 15, 2003; NOMW filed its answer and peremptory exception on January 12, 2004; on December 3, 2004, the trial court granted Touro's motion for summary judgment against NOMW on the issue of liability and subsequently denied NOMW's cross-motion for summary judgment; RMG was named in the lawsuit on October 18,2004; on December 8, 2004, RMG filed an exception of prematurity, asserting its right to arbitration under the general contract; and on December 8, 2004, NOMW filed an exception of arbitration asserting its right to arbitration through its subcontract agreement with RMG.
Touro relies on the finding in I.D.C., Inc. v. McCain-Winkler Partnership, 396 So.2d 590 (La.App. 3rd Cir.1981) to support its position that NOMW's actions resulted in a waiver of its right to arbitration. The court in I.D.C. found that a party that requested arbitration for the first time on the day of trial after filing a reconventional demand and requesting the matter be set for trial had effectively waived its right to arbitration.
In Matthews-McCracken Rutland Corp. v. City of Plaquemine, 414 So.2d 756 (La. 1982), the Supreme Court stated that "[o]nce the court finds an agreement to arbitrate and a failure to comply therewith, the court shall order arbitration." Matthews-McCracken, 414 So.2d at 757 citing Bartley, Inc. v. Jefferson Parish *747 School Board 302 So.2d 280 (La.1974) (emphasis added). Additionally, this Court is directed by the Supreme Court's holding in International River Center v. Johns-Manville Sales Corporation, XXXX-XXXX (La.12/3/03); 861 So.2d 139. In the International River opinion the Supreme Court held that the waiver of a contractual arbitration agreement is an issue to be decided by arbitrators, not the court. Although we are hesitant to remove litigants from the State judicial system in favor of a private court system, it appears that we are mandated to do so under these circumstances.
For the reasons set forth by this Court, the Motions for Summary Judgment granted in favor of Touro on the issues of redhibitory defect and express warranty are reversed as are the denial of NOMW's exception of arbitration, motion to stay and motion to dismiss.
REVERSED AND REMANDED.

ORDER
IT IS ORDERED that the application for rehearing filed by Touro Infirmary is hereby DENIED.
JONES, J., dissents and would grant the application for rehearing.
While I agree that the disposition of this Court was correct, I would grant the application for rehearing for the sole purpose of addressing the legal arguments of the applicant.
Material issues of fact remain, precluding the granting of a motion for summary judgment. However, in denying this application for rehearing, Movers are entitled to have this Court revisit the legal arguments forming the basis for support of the application for rehearing.
NOTES
[1] On December 20, 2005, due to some confusion regarding the scheduling of the appeal, NOMW filed a brief on this issue in the present appeal. On May 2, 2006, Touro filed a motion to strike NOMW's brief on the grounds that the judgment sought to be appealed was not consolidated with the July 19, 2004 and March 7, 2005 judgments. This panel denied the motion to strike and NOMW's appeal was submitted on the briefs.
[2] Those factors are as follows:

1) The relationship between the adjudicated and unadjudicated claims;
2) The possibility that the need for review might or might not be mooted by future developments in the trial court;
3) The possibility that the reviewing court might be obliged to consider the same issue a second time; and
4) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.
Messinger, 894 So.2d at 1122, citing Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360, 364 (3rd Cir.1975).
[3] Mr. Odom and Mr. DuBose specialize in moisture and mold-related building problems.
[4] The record contains reports drafted by Building Engineering-Consultants, Inc., Engineering Diagnostics, and Meyer Engineers, LTD. Also, Ladd Ehlinger's deposition testimony concedes that with the excessive water intrusion the building was unlikely to escape mold and mildew contamination.
[5] William E. Crawford, 12 La. Civil Law Treatise: Tort Law § 16.26 (2002).
[6] Touro has relied on language in the purchase order to obtain summary judgment against NOMW for liability. Thus, Touro concedes that the terms and conditions of the purchase agreement are contractually binding.
[7] The trial court has ruled that there is an enforceable arbitration agreement between Touro and RMG. This court denied Touro's application for supervisory writ on the issue.