PAUL A. BONIN, Judge.
|,Broadmoor, L.L.C., appeals the trial court’s sustaining the objection of libera-tive prescription raised by Pella Corporation, which dismissed with prejudice Broadmoor’s third party demand against Pella. Broadmoor also appeals the grant of summary judgment in favor of J.F. Day and Company, Inc., which dismissed with prejudice Broadmoor’s third party demand against Day,[1] as well as the denial of its own motion for partial summary judgment on the issues of indemnity and defense.
Broadmoor was the designer and general contractor of the Marseilles Condominiums, a high-rise residential building on the Lakefront in New Orleans. As part of Broadmoor’s undertaking, it purchased from Day windows manufactured by Pella. Day, Pella’s exclusive distributor in the New Orleans region, entered a contract or purchase order with Broadmoor on May 19, 2000, to supply the Pella-windows. Broadmoor’s purchase order form contained a number | aof express obligations for a seller; among these obligations was the duty to indemnify, defend, and hold harmless Broadmoor even on account of Broadmoor’s negligence or liability incident to or in connection with the purchase and the duty to cause Broadmoor to be named as an additional insured on the seller’s insurance policies. The windows and doors were provided; Pella warranted its windows for ten years.
In late 2002, Tropical Storm Isidore and Hurricane Lili struck the New Orleans area, and the Marseilles Condominiums sustained water intrusion damage. The homeowners association sued Broadmoor on January 15, 2003, and joined Pella and Day on July 8, 2008. Broadmoor filed its third party petition against Pella and Day on July 15, 2008. Broadmoor’s claim against Pella was for the cost of repairs *1103 performed by Broadmoor, which were expended by February 28, 2003. Broadm-oor’s claim against Day was for indemnity and defense.
Pella objected to the lateness of Broadmoor’s filing against it and filed an exception of prescription. Because there was no evidence introduced at the hearing on the exception, the trial judge decided the matter solely upon Broadmoor’s third party petition, determined that the one-year prescriptive period to institute suit had prescribed, and dismissed the claim with prejudice. Applying the manifest error standard of review, we find that the trial judge was not clearly erroneous and affirm the judgment on the exception.
Day’s motion for summary judgment asserted that the indemnity/defense obligations of its purchase order were set forth on the reverse side of the purchase |sorder, that no attention was called to them, that they were not negotiated or bargained for, and that its employee did not have authority to execute the agreement. The trial judge ruled solely upon a determination that the seller’s obligations were on the reverse side of the signature page of the purchase order and no reference was made to them on the signature page, thus rendering these very onerous obligations null. At the same time, the trial judge denied Broadmoor’s motion for partial summary judgment, which sought a ruling on the issue that the provisions were permitted by law and thus enforceable. On our de novo review of the two motions,[2] we conclude that there is a genuine issue of material fact which precludes summary judgment in favor of either Broadmoor or Day. The material fact here is dependent upon whether the parties mutually consented to the provisions or conditions and how the offer and acceptance occurred to establish the obligation which Broadmoor seeks to enforce. Thus, we reverse the summary judgment in favor of Day, affirm the denial of Broadm-oor’s summary judgment, and remand to the trial court for further proceedings.
We explain our decision in greater detail below.
I
In this Part we explain why we uphold the trial court’s finding that Broadmoor’s claims against Pella are prescribed.
^Prescription is an objection that may be raised by peremptory exception. See La. C.C.P. art. 927 A(l). At the hearing on the exception, “evidence may be introduced to support or controvert the objection pleaded, when the grounds therefor do not appear from the petition.” La. C.C.P. art. 931. When no evidence is introduced at the hearing, however, the exception must be decided on the facts alleged in the petition, and all the factual allegations are accepted as true. See De-noux v. Vessel Management Services, Inc., 07-2143, pp. 5-6 (La.5/21/08), 983 So.2d 84, 88. Because here no evidence was introduced at the hearing,[3] we review the factu *1104 al allegations of Broadmoor’s third party petition, accept them as true, and decide whether the trial judge was clearly wrong in sustaining the exception and dismissing the suit. See La. C.C.P. art. 934.
A
Broadmoor contends on appeal that there are three legal theories under which it can recover from Pella, none of which would result in the third party demand, which was filed in 2008 for loss or damage sustained in 2002, being prescribed. The three theories are (1) that Broadmoor was lulled into inaction by ongoing settlement negotiations with Pella; (2) that Pella is unjustly enriched at Broadmoor’s expense, and (3) that Pella’s ten-year warranty extends the prescriptive period. In the following sections, we contrast the controlling legal principles upon which each of these three theories of recovery are founded with the | ¡-.factual allegations of the third party petition so as to demonstrate that Broadmoor did not carry its burden to prove a longer than one-year prescriptive period.
1
We first consider the idea that any liberative prescriptive period can be interrupted by the debtor lulling the creditor into inaction. “Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe.” La. Civil Code art. 3464. “Acknowledgement interruptive of prescription results from any act or fact which contains or implies the admission of the existence of the right.” 5 Civil Law Translations, Baudry-Lacantinerie & Tissier, Prescription, § 529, cited approvingly by Flowers v. U.S. Fidelity & Guaranty Co., 381 So.2d 378, 382 (La.1979). “A tacit acknowledgement occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer of payment, or lulls the creditor into believing he will not contest liability.” Lima v. Schmidt, 595 So.2d 624, 634 (La.1992). Other criteria that can evidence an acknowledgement include “undisputed liability, repeated and open-ended reassurances of payment, and continuous and frequent contact with the creditor throughout the prescriptive period.” Id.
Our inspection of Broadmoor’s petition reveals no factual allegations which could support application of the interrup-tive effects of Article 3464. Broadmoor alleges that in 2002, at its request, Pella wet-sealed the windows and doors and provided a new ten-year warranty beginning on December 9, 2002. But then its allegations go further and describe how Broadm-oor made repeated attempts to | (¡negotiate a reasonable settlement for the cost of repairs and how, since Hurricane Katrina in August 2005, there were new complaints about the windows and doors.
There is no allegation, factual or otherwise, that Pella lulled Broadmoor into believing it would not contest liability with respect to the cost of the repairs. Not only did Pella not consider the liability undisputed, but Broadmoor in its own petition emphasized that it was not admitting any liability for the alleged defects in the windows and doors. None of the allegations even suggest that Pella gave any assurances of payment to Broadmoor.
Importantly, Broadmoor’s allegations support Pella’s contentions that there was no lulling. “[M]ere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of dis *1105 puted claims will not constitute acknowl-edgements.” Lima v. Schmidt, supra. Also, “settlement or compromise offers or negotiations do not evidence an acknowl-edgement.” Id.; see also Perez v. Finn, 04-1914, p. 7 (La.App. 4 Cir. 3/2/05), 899 So.2d 585, 589.
Thus, we conclude that there is no factual allegation in the petition which could support the interruption of prescription through acknowledgement of the debt by Pella.
2
Broadmoor’s second theory of recovery is that of unjust enrichment. Broadmoor argues that its claim for unjust enrichment is not prescribed for ten years. See La. Civil Code art. 3499 (“Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.”); see also Minyard v. Curtis Products, Inc., 251 La. 624, 653, 205 So.2d 422, 433 (1967) (unjust enrichment claim is prescribed by ten years reckoning from day judgment was obtained against the impoverished party).
“A person who has been enriched without cause at the expense of another person is bound to compensate that person.” La. Civil Code art. 2298. A prerequisite for maintaining a claim for unjust enrichment is that the plaintiff have no other remedy available to him. See La. Civil Code art. 2298 (“The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.”); see also Creely v. Leisure Living, Inc., 437 So.2d 816, 822 (La.1983) (“There must be no other remedy at law available to the plaintiff.”).[4]
Here again, not only does Broadm-oor’s petition lack any factual allegation that Broadmoor has no other remedy, but it actually suggests several other legal theories under which it is asserting its claim against Pella. In addition to its assertion that it had a cause of action against Pella on account of its express ten-year warranty, its petition specifies its claim is being brought under La. Civil Code art. 2545 on account of the manufacturer’s knowledge of the redhibitory defects of its product and under La. R.S. 9:2800.51 et seq., the Louisiana Products Liability Act. Such a pleading in and of itself precludes recovery under a claim of unjust enrichment. See Walters v. MedSouth Record Management, LLC, 10-0352, p. 2 (La.6/4/10), 38 So.3d 241, 242 (“Having pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment.”).
Broadmoor argues that the circumstances of its claim for unjust enrichment are virtually identical to those in Minyard, supra, (in which the impoverished contractor’s suit against the enriched manufacturer was found to be timely) on the same kind of cause of action. At the time of the Minyard decision, it is true, the contractor like Broadmoor who had purchased a product through an intermediary like Day had no cause of action against a manufacturer like Pella. Today, however, a contractor under these same circumstances does have a cause of action against a manufacturer under the Louisiana Product Liability Act, at least, and may have one in redhibition as well. See Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 91, 262 So.2d 377, 381 (1972) (“Louisiana has *1106 aligned itself with the consumer-protection rule, by allowing a consumer without privity to recover, whether the suit be strictly in tort or upon implied warranty.”).
Thus, again we conclude not only that there are no factual allegations in Broadm-oor’s petition which support a claim for unjust enrichment, but also that its pleading an action under the Act or in redhibition precludes a claim under unjust enrichment.
We note in passing that the fact that Broadmoor’s claim under the Act was prescribed at the time it filed its third party petition against Pella (see discussion in Part I-D) does not satisfy the requirement that Broadmoor have no other remedy. _]_2See Walters, supra (“Moreover, we find it of no moment that plaintiffs tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment.”); see also Dugas v. Thompson, 11-0178, p. 14 (La.App. 4 Cir. 6/29/11), 71 So.3d 1059, 1068.
3
We now consider Broadmoor’s contention that its suit is timely because Pella granted a ten-year warranty on the products manufactured by it. Under the pleadings, the ten-year period commenced on December 9, 2002, and thus, according to Broadmoor, the prescriptive period expired no sooner than December 9, 2012. We disagree.[5]
Dispositively, we have previously held that a breach of express warranty “is no longer viable as an independent theory of recovery against a manufacturer.” Touro Infirmary v. Sizeler Architects, 04-2210, p. 7 (La App. 4 Cir. 11/21/06), 947 So.2d 740, 744, citing to La. R.S. 9:2800.54 B(l — 4). All such possible causes of actions are now subsumed under the Louisiana Products Liability Act (see discussion Part I-B, post), with the possible exception of a claim in redhibition. Id., p. 6, 947 So.2d at 744.
A warranty period is different from a prescriptive period. A manufacturer can guarantee that it assures the suitability of its product for a stated period of time and, if during that period of time it turns out that the product is not as warranted, |10the damaged party may commence an action in redhibition. See Ford Motor Credit Co. v. Bower, 589 So.2d 571, 573 (La.App. 1st Cir.1991). “Actions based on a breach of warranty against defects are to be brought in redhibition instead of as a breach of contract.” Id. Because damages that are caused by a breach of warranty are founded not in contract but in redhibition, they are “subject to the prescriptive period applicable to redhibitory actions.” Id. Thus, even though the warranty period may extend, as here, for ten years, a redhibitory claim must be brought within the prescriptive period established for a redhibitory defect. {See discussion at Part I-D, post.)
Moreover, a warranty period cannot be construed to specify a longer prescriptive period than that established by law. See La. Civil Code art. 3471 (“A juridical act purporting to exclude prescription, to specify a longer period than that established by law, or to make the requirements of prescription more onerous, are null.”).
*1107 Thus, the last date alleged in Broadm-oor’s petition regarding any problem with Pella’s doors is August 2005, following Hurricane Katrina. At that time the doors and windows were still in the warranty period. But the redhibition action had to be filed within the prescriptive period. Because Broadmoor knew or discovered defects in the windows and doors in August 2005, a one-year prescriptive period would commence at that time. See La. Civil Code art. 2534 A(l) or B. Because the third party petition was not filed by that date, it would be prescribed under this theory of recovery.
_LuB
Having rejected Broadmoor’s three theories for a prescriptive period longer than one year, we confirm, as Pella argues, that the liberative prescriptive period for the cause of action asserted in Broadmoor’s petition is that of one-year and that the prescriptive period had expired at the time Pella was first sued.
On Broadmoor’s redhibition claim, accepting its allegations as true, Broadmoor knew or discovered the defects in the windows and doors as early as October 2002. Ordinarily, a one-year prescriptive period would commence at that time. See La. Civil Code art. 2534 A(l) or B. Pella’s last effort at repair or remediation occurred, however, on December 9, 2002. This conducting the repair and tendering the product back to Broadmoor interrupted the prescriptive period, and it commenced anew on that date. See La. Civil Code art. 2534 C (“In any case prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer”). Clearly, Broadmoor’s redhibitory action was prescribed.
The prescriptive period of one-year also controls Broadmoor’s claim against Pella under the Products Liability Act. The one-year prescriptive period for delictual actions provided in Civil Code Article 3492 applies to actions brought under the Louisiana Products Liability Act. See Denoux, 07-2143, pp. 5, 7-8, 983 So.2d at 88-89, citing with approval to Denoux v. Vessel Management Services, Inc., 07-0163, p. 4 (La.App. 4 Cir. 7/11/07), 964 So.2d 1081,1084, on this point.
| t2Thus, we conclude that the trial judge was not clearly wrong in concluding from the face of Broadmoor’s petition that its claim against Pella was prescribed.
II
In this Part we explain why we find that the district court’s granting of Day’s motion for summary judgment must be reversed and why its denial of Broadmoor’s motion for partial summary judgment was correctly denied. Both Day and Broadm-oor argue that there are no genuine issues of material fact and that there should be judgment as a matter of law. We disagree with the parties because we find that there is a genuine issue of material fact which precludes summary judgment in favor of either party.
A
The parties’ dispute centers on the enforceability of the indemnity and defense provisions of a contract for the sale of windows by Day to Broadmoor. Broadm-oor routinely used its own custom “purchase order” form. We understand that the form was printed on both sides of the page.[6] The page’s front side, which con *1108 tained signature lines for the contracting parties, made no reference to the special indemnity and defense provisions on the page’s reverse side.
The purchase order, as it appears in the record, consists of six pages. The pages of the contract are not numbered. The first two pages appear to be a faxed proposal from Broadmoor to Day. On the first two pages are listed the specific Indoors and windows to be purchased and additional terms to the contract.[7] On the third page is the signature of John Reynolds, Day’s representative, and Mr. Reynolds’ notation following his signature, stating, “see attached copy for revisions to mark #’s + details to windows and doors,” which Mr. Reynolds has initialed. The fourth and fifth pages produced are exact copies of the first two, but with hand-written modifications to the list of products that were to be sold. The sixth page is titled “Conditions” and contains Broadmoor’s standardized or boilerplate language. There is no language preceding the “Conditions” page that indicates terms in other writings would be incorporated into the contract.
Before describing the parties’ respective contentions and in order to emphasize the extremely onerous aspects of the provisions set out in the “Conditions,” we reproduce the contentious portions below:
6. (a) Seller/Subcontractor shall protect, defend, indemnify and hold harmless Buyer/Contractor and any agents, affiliates, subsidiary [and] related companies, directors, officers, employees, shareholders, assigns, partners, joint ventures, Subcontractor, or servants of Buyer/Contractor or any other persons or entity sharing equal, subordinate or superior status to the Buyer/Contractor in the performance [of] this work from and against aoy [sic] and all claims, demands, losses, liabilities, cost, judgments, obligations and causes of action of every kin[d of] character whatsoever related to or on account of bodily iojury [sic], death, property damage, or loss by whomsoever made, without limit and without regard to the cause or causes thereof or the negligence of any party or parties (including, but not [ 14limited to, the sole negligence o[r] strict liability of Buyer/Contractor) incident to or in connection with this documents [sic], whether arising out of performance of work or services] hereunder or otherwise.
(b) Seller/Subcontractor shall carry such employer’s liability or Workmen’s Compensation insurance as listed below to insure the liability of the parties hereto for injuries to, or death of, Seller/Subcontractor employees, aod [sic] Seller/Subcontractor shall also carry adequate] public liability insuraoce [sic] covering accidents to persons and property occasiooed [sic] by Seller/Subcontractor in the performance of any of the work covered by this contract, and Seller/Subcontractor shall also carry all insurance required by the law of the place where said work is done, and shall also insure his own risk in and about the building site, including all temporary material and structures used by him. *1109 Failu[re to] maintain insurance as required shall be grounds for withholding payment. Seller/Subcontractor shall furnish evidence of the following insurance’s [sic]:
Workers Compeosation [sic] Statutory Including U.S. Longshore & Harborworkers and Maritime Comverage Endorsements where applicable
Employer’s Liability 1,000,000/eaeh accident 1,000,000/disease-policy incident 1,000,000/disease-each employee
1,000,000/occurrence 1,000,000/project or location General Liability (Broad Form) Bodily Injury & Property Damage Combined Single Limit:
1,000,000/project or location Products/Completed Operation Auto Liability Bodily Injury & Property Damage Combined
1,000,000/occurrence Single Limit:
7. The above Worker’s Compensation Insurance shall contain a waiver of sub-rogation against Broadmoor. General Liability and Auto Liability policies shall name Broadmoor as an additional insured.
8. Seller/Subcontractor agrees to indemnify and save harmless Buyer/Contractor from any and all claims or hssuits for infringement or pa[tents] or violation of patent rights by Seller/Subcontractor, and further agrees to pay all loss and expenses incurred by Buyer/Contractor by rea[son] of any such claims or suits, including counsel fees.
By way of preliminary comment, in Paragraph 6(a) a seller like Day purportedly agrees to indemnify and defend Broadmoor for Broadmoor’s own negligent actions, even if those negligent actions are completely unrelated to the contract with Day, and for an undetermined amount of time. There appear to be no limits to the timing or scope of Day’s duty to Broadm-oor occasioned by Paragraph 6(a).
Day submitted testimonial evidence both by deposition and affidavit that Broadmoor had never called its attention to the provisions on the reverse side of the purchase order. Implicitly claiming never to have seen the provisions, having no knowledge of them, and having no warning or admonition about them, Day argued that the provisions, concealed from them, cannot be enforced because Day had not agreed to the conditions.
Broadmoor countered that when in discovery it requested Day to produce the purchase order, Day produced copies of the purchase order which included a copy of the objected-to provisions. Thus, Broadmoor argues, Day’s knowledge of the existence of the provisions is established and, Broadmoor further argues, it requested a summary judgment on the limited issue of the enforceability of those provisions.
Day responded by arguing that it was not bound by its production of the copy of the purchase order because it had simply responded with the same 11fipurchase order which Broadmoor had produced in and attached to depositions and that it had never admitted to the copy being the agreement between them.
Notably, the copies of the contract which are contained in the record appear to us to *1110 have been exchanged by fax for signatures. The original contract is not in evidence, and the parties report that no one has located it and they are currently unable to ascertain whether the agreement was con-fected on the original of the Broadmoor’s purchase order form. The deponents and affiants do not rule out that the purchase order may have been executed through an exchange of faxes, and no one categorically denies that the provisions may have also been faxed as any other page.
The trial judge stated that he found the fact that Broadmoor’s custom purchase order form contained the provisions without warning or admonition to Day and as a matter of law he granted summary judgment. The essence of his ruling is that the purchase order, as a matter of law, did not incorporate the provisions at issue. The trial judge, however, did not resolve the factual disputes about delivery and receipt of the purchase order.[8]
B
We review a grant or a denial of a motion for summary judgment de novo. Bonin v. Westport Ins. Corp., 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910. That is, there is no deference to the trial judge’s legal findings. And, as is well-known,17 summary judgment is to be granted only when “there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B(2). Our sole inquiry, then, is the same as for the trial court: is there any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Bonin, supra.
A fact is material if it is one that would matter at trial on the merits. Put differently, a fact is material when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they “potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.” Woodland Properties, L.L.C. v. New Orleans Sewerage and Water Bd., 10-0331, p. 3 (La.App. 4 Cir. 9/29/10), 49 So.3d 443, 445. Simply put, a material fact is one that would matter on the trial on the merits. “Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits.” Suire v. Lafayette City-Parish Consol. Govt., 04-1459, p. 11 (La.4/12/05), 907 So.2d 37, 48. And in determining whether an issue is genuine, we cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact. Windham v. Munay, 06-1275, p. 3 (La.App. 4 Cir. 5/30/07), 960 So.2d 328, 331.
Thus, a “genuine issue” is a triable issue, that is, an issue on which reasonable persons could disagree. Jones v. Estate of Santiago, 03-1424, p. 6 (La.4/14/04), 870 So.2d 1002, 1006. Importantly, in order to determine whether a fact is material, a reviewing court must evaluate the substan *1111 tive law that governs the litigation at issue. Woodland Properties, 10-0331, p. 4, 49 So.3d at 445.
11RBecause this dispute is at the core a dispute about whether Broadmoor and Day entered into a contract containing these onerous indemnity and defense provisions, we begin by evaluating the substantive law on contracts. “A contract is formed by the consent of the parties established through offer and acceptance.” La. Civil Code art.1927 (emphasis added). Generally, “offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.” Id. And “[u]nless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.” Id.
Clearly, in this case, the dis-positive factual issue is whether Day consented to the onerous provisions. Consent is an absolute necessity to the formation of a contract, and “where there is no meeting of the minds between the parties the contract is void for lack of consent.” Philips v. Berner, 00-0103, p. 5 (La.App. 4 Cir. 5/16/01), 789 So.2d 41, 45. Importantly, consent envisions agreement on all elements of a given sale or contract. See id. Here, if Day did not consent to the disputed defense and indemnity conditions, there was no meeting of the minds, and the contract would, therefore, be void for lack of consent.
Here, a dispute about whether there was a “meeting of the minds” respecting these provisions is clear. From the facts submitted in support of the respective motions, we are in considerable doubt as to whether the parties had an agreement about these provisions. Our doubt about the existence of the agreement is especially heightened because we are considering a very onerous indemnity and defense agreement. Made in a different context but nonetheless illuminating for our purposes is the Supreme Court’s statement about the careful attention to be given the strict construction of indemnity contracts before applying or enforcing | Tatheir provisions: “[S]uch a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms. ” Polozola v. Garlock, 343 So.2d 1000, 1003 (La.1977) (emphasis added); see also Morelia v. Board of Com’rs of Port of New Orleans, 04-0312 (La.App. 4 Cir. 10/27/04), 888 So.2d 321, 328.
We have considered our decision in AWC, Inc. v. CSF Construction, Inc., 05-0865 (La.App. 4 Cir. 4/26/06), 931 So.2d 382, upon which it appears that the trial judge may have relied. There, a buyer and seller disputed which of them bore the burden of paying sales tax on two purchase orders. Id., p. 1, 931 So.2d at 383. In the purchase agreement (in that case prepared by the buyer), the reverse side of the contract contained a provision indicating that the seller was to pay sales tax for the transaction. Id., p. 4, 931 So.2d at 385. The contract was sent by fax, and it was disputed whether the seller ever saw the condition that it was required to pay sales tax. The contract there, unlike Broadm-oor’s purchase order, provided the following language on the face of both purchase orders in all capital letters: “THIS PURCHASE ORDER SUBJECT TO TERMS AND CONDITIONS ON REVERSE.” Id., p. 3, 931 So.2d at 385.
We there held that the buyer’s referencing to terms and conditions on the reverse page was “sufficient to put [the seller] on notice that [the buyer] intended to incorporate terms and conditions into the Purchase Order in addition to those shown on *1112 the face of the document.” Id., p. 7, 931 So.2d at 387. “It then became incumbent upon [the seller] to inquire further as to the nature of those terms and conditions.” Id. AWC, Inc. v. CSF Construction, Inc., however, does not stand for a sort of inverse legal principle that in the absence of explicit notice on the front page any | ^provisions on the reverse side are unenforceable. The concurring opinion of Judge Belsome highlights that our decision there was not to announce a legal principle, but to resolve a factual dispute. See AWC, Inc. v. CSF Construction, Inc., 931 So.2d at 387 (Belsome, J., concurring) (noting, “We have not created a duty on a purchaser to examine terms that were not physically attached to the agreement to sell. However, there was evidence in the record to establish that AWC actually received the terms contained in paragraph # 21.”) (emphasis added)
Here, we know that there was no incorporating language putting Day on notice that it will be bound by additional terms appearing on the reverse of the signature page. And there is no undisputed evidence in the record that Day actually received the “Conditions” page. Without undisputed evidence of Day’s knowledge of the conditions, we cannot determine what Day actually agreed to when it signed the purchase order. Day’s knowledge of the “Conditions” page at the time of the agreement, therefore, is an essential element to the determination of whether a contract was ever formed.[9] Because Day’s knowledge, or lack thereof, could be the subject of disagreement among reasonable minds, such knowledge is a genuine issue of material fact, precluding summary judgment.[10]
Because Broadmoor is the party demanding performance of the indemnity and defense obligations, it is the party at trial with the burden of proof. See La. Civil Code art. 1831 (“A party who demands performance of an obligation must prove the existence of the obligation.”) Thus, Day’s burden on its motion was simply to point out that there was an absence of factual support for an essential element of Broadmoor’s claim, which would then shift the burden to Broadmoor |21to establish that it will be able to satisfy its eviden-tiary burden and, if it can, there is a genuine issue of material fact which precludes summary judgment. Cf. La. C.C.P. art. 966 C(2). We find from the record that Broadmoor has produced evidence, including some from Day’s document production, that can plausibly show that Day agreed to the indemnity provisions. But we also find from the evidence that Broadmoor did not show on its motion that there is no genuine issue of material fact which would entitle it to the partial summary judgment which it sought on a limited issue. Cf. La. C.C.P. art. 966 C(l) and E.
Accordingly, we affirm the trial court’s denial of Broadmoor’s motion for partial summary judgment, but reverse the summary judgment which it rendered in favor of Day (and its insurers).[11] We remand to the district court for further proceedings.
*1113 |aaDECREE
We affirm the judgment of the district court sustaining Pella’s exception of prescription and dismissing Pella with prejudice from the third party petition of Broadmoor, LLC. We also affirm the district court’s denial of Broadmoor’s partial motion for summary judgment. We reverse the summary judgment in favor of J.F. Day & Company, Inc. (and its insurers) and against Broadmoor, which dismissed them with prejudice. We remand the matter to the district court for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

. The dismissal also affects Broadmoor's claims for indemnity and defense against several insurers: Columbia Casualty Company; Liberty Mutual Insurance Company; The Travelers Lloyds Insurance Company, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, St. Paul Mercury Insurance; and Zurich American Insurance Company. The insurers were also made third-party defendants and joined Day’s motion for summary judgment.

. Generally, the denial of a partial summary judgment motion is an interlocutory judgment which is not eligible for designation as final and appealable. See Yokum v. Van Calsem, 07-0676, pp. 5-6 (La.App. 4 Cir. 3/26/08), 981 So.2d 725, 730. But, in the context of cross-motions for summary judgment, a party may obtain appellate review of the judgment denying its motion when it appeals the judgment which granted the opposing party relief on the issue. See Favrot v. Favrot, 10-0986, p. 2 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1102 n. 1. Thus, both parties’ appeals of the various aspects of the district court’s rulings are properly before us. See also Bass Partnership v. Gravolet, 12-0024, pp. 10-11 (La.App. 4 Cir. 11/21/12), 105 So.3d 224, 230-231. But see n. 11, post.

. At the hearing the trial judge expressly invited Broadmoor to introduce whatever evi *1104 dence it desired, but Broadmoor did not formally admit any evidence in opposition to the exception.

. There are four other criteria or prerequisites set out in Creely at 821-822: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment, and (4) there must be an absence of justification or cause for the enrichment and impoverishment.

. We note that Broadmoor has not offered any authority for its proposition that the warranty period is a prescriptive period or that a warranty, being contractual or quasi-contractual in nature, is governed by the ten-year prescriptive period for personal actions under La. Civil Code art. 3499.

. A sample of the form is not contained in the record. In addition to not having the original contract, we have not been provided with a copy of the contract that does not have portions of the right side cut off of it. Brackets are used to indicate where we have guessed at *1108 filling in what a copy machine has taken away.

. The additional terms to the contract on the second page include:
1. Sales tax is included.
6. Included is 10-year product warranty and 20 year insulated glass warranty.
11. Schedule — Delivery of windows is (10) weeks after receipt of approved shop drawings.
12. Freight is included.
13. Excluded is Performance Bond, interi- or trim, interior finishing and installation.

. Day also defended against Broadmoor's motion for partial summary judgment by urging, for the first time (as best we can ascertain) in the litigation that its representative, Mr. Reynolds, lacked corporate authority to execute such a purchase order with the special provisions. As Day’s mandatary, Mr. Reynolds would have the “general authority to do whatever is appropriate under the circumstances.” La. Civil Code art. 2994. Because, there is a genuine issue of material fact as to whether any Day representative actually saw the “Conditions” page before litigation arose, we do not make a determination of whether Mr. Reynolds had corporate authority to make such a decision. (See also n. 9, post, regarding ratification.)

. We do not mean to foreclose on remand proof of ratification. See La. Civil Code art. 1843.

. This is especially so when we consider that we are considering an indemnity agreement. See Polozola, supra.

. The insurers’ (see n. 1, ante) defenses on appeal were derivative of or dependent upon the disposition of Day’s motion for summary judgment. We recognize that they may have defenses to Broadmoor's claims independent of Day’s defenses. In particular, we note that Columbia Casualty asserts in brief that it has a specific policy defense which it has asserted against Broadmoor and seeks relief independent of our disposition with respect to Day’s defenses. The trial judge denied Columbia Casualty’s motion for summary judgment as *1113 moot, but the insurer did not appeal or answer the appeal; thus, we do not address its argument. In any event, in light of our decision, it may re-urge its motion in the district court on remand.