PAUL A. BONIN, Judge.
I,The trial judge granted Patricia Jordan’s motion for summary judgment, dismissing with prejudice Yvonne Montana’s action to annul the judgment, which confirmed Ms. Jordan’s title to property acquired at tax sale. The trial judge also denied Ms. Montana’s motion for summary judgment and overruled Ms. Jordan’s peremptory exceptions of no cause of action, no right of action, and prescription. Ms. Montana appeals both the final judgment dismissing her claim with prejudice and the interlocutory judgment denying her motion for summary judgment.
Having conducted a de novo review of the cross-motions for summary judgment, we conclude that both parties failed to meet their respective burdens of proof as set forth in La. C.C.P. art. 966. Ms. Jordan did not identify an absence of factual support for an element essential to Ms. Montana’s claim, and Ms. Montana failed to establish that no genuine issue as to any material fact exists. As a result, the trial judge was precluded from granting summary judgment to either party. We therefore reverse the trial judge’s decision to grant Ms. Jordan’s motion for summary judgment, affirm her denial of Ms. Montana’s motion for summary | ¡.judgment, and remand the matter to the trial court for further proceedings. We explain our reasoning in greater detail below.
I
We begin by describing the facts underlying this controversy.
Ms. Irma Santiago, the mother of the appellant, owned residential property located at 3100 Louisa Street in New Orleans. The ad valorem taxes assessed against this property went unpaid for the 2006-2008 tax years; as a result, on January 28, 2010, the City’s Finance Director executed a Tax Sale Deed for an undivided one percent (1%) interest in the property to Ms. Jordan upon her payment of the delinquent taxes, interest, and penalties. See La. R.S. 47:215s.[1] Ms. Jordan later filed a petition to quiet title against Ms. Santiago in Civil District Court under number 12-3842. See La. R.S. 47:2266. On December 18, 2012, the district judge, following, according to the judgment, a contradictory hearing, confirmed Ms. Jordan’s title over the entirety (100%) of the property.
Two days later, Ms. Santiago died in her home in San Antonio, Texas. Ms. Santiago died intestate, and thus Ms. Montana, as her sole heir, became the universal successor of Ms. Santiago as of the time of her death. See La. Civil Code arts. 3506(28), 935.
Neither Ms. Santiago (prior to her death) nor Ms. Montana (after her mother’s death) filed a motion for new trial or an appeal of the judgment | ^confirming tax title. On January 2, 2013, however, Ms. Montana paid all outstanding taxes, interest, and costs due for the 2006-2013 tax years on the property, and the City’s Finance Director issued a Receiving Warrant which verified her payment.
Claiming that the confirmation judgment was obtained by “fraud or ill practices,” Ms. Montana next instituted a nullity action on April 23, 2013 in Civil District Court under number 13-3863.[2] Ms. Montana amended this suit after being recog *1215 nized as the sole owner of her mother’s estate, which included the property subject to this confirmation judgment, by Judgment of Possession on May 22, 2013. Ms. Montana had opened her mother’s succession in Civil District Court under number 13-4091.
Ms. Montana then filed a motion for summary judgment, and Ms. Jordan responded by filing her own motion for summary judgment in addition to asserting peremptory exceptions of no cause of action, no right of action, and prescription. See La. C.C.P. arts. 966, 927 A(l, 5, 6). The district judge granted Ms. Jordan’s motion for summary judgment, denied Ms. Montana’s motion, and overruled Ms. Jordan’s peremptory exceptions. Ms. Montana timely appealed the final judgment dismissing her claim with prejudice and the interlocutory judgment denying her motion for summary judgment. See La. C.C.P. art. 2123.[3]
_kn
Before we substantively discuss our review of the complained-of rulings, we briefly consider Ms. Montana’s status as the universal successor to Ms. Santiago. Even though Ms. Jordan did not file an answer to Ms. Montana’s appeal, see La. C.C.P. arts. 2133 A, and on that account the trial judge’s decision to overrule Ms. Jordan’s peremptory exception of no right of action was not preserved for our appellate review, we consider it helpful to explain why Ms. Montana is the appropriate party to bring this nullity action following the death of her mother. Ms. Jordan asserted that standing to institute this nullity action was the strictly personal, non-heritable right of Ms. Santiago. Ms. Montana, as Ms. Santiago’s universal successor, however, acquired, upon her mother’s death, all of her mother’s rights which were heritable. See La. Civil Code arts. 3506(28); 1416 cmt. (a). Such rights include ownership over her mother’s remaining undivided interest in the property not conveyed at tax sale and, incidental thereto, the right to timely challenge any judgment affecting that property.
A
The status of universal successor affords to its holder numerous rights and responsibilities. A “universal successor represents the person of the deceased, and succeeds to all [her] rights and charges.” La. Civil Code art. 3506(28). Universal successors acquire ownership of the deceased’s estate immediately upon their death, see La. Civil Code art. 935, and “continue the possession of the decedent | swith all its advantages and defects, and with no alteration in the nature of the possession.” La. Civil Code art. 936.
The immediacy of the acquisition of her ownership allows for Ms. Montana to exercise rights with respect to her interests in a thing of the estate as well as in the estate as a whole prior to the judicial appointment of a succession representative. See La. Civil Code art. 938 A. A universal successor may also, prior to the judicial appointment of a succession representative, represent the decedent with respect to her heritable rights and obligations. See La. Civil Code art. 935.
B
As Ms. Santiago’s universal successor, Ms. Montana has standing to institute this *1216 nullity action challenging a confirmation judgment, rendered prior to her mother’s death, which conveyed an additional 99% ownership interest than that reflected in Ms. Jordan’s Tax Sale Deed. Ms. Santiago’s right to protect that ownership interest through a nullity action is heritable. See La. Civil Code arts. 1765,1766.
1
“A civil action is a demand for the enforcement of a right.” La. C.C.P. art. 421. An action to enforce an obligation is the property of the obligee which on his death is transmitted with his estate to his heir. See La. C.C.P. art. 426. This rule also applies to a right to enforce an obligation, when no action thereon was commenced prior to the obligee’s death. See ibid. An obligation and, by |ñinference, a right is “heritable when its performance may be enforced by a successor of the obligee or against a successor of the obligor.” La. Civil Code art. 1765. “Every obligation is deemed heritable as to all parties, except where the contrary results from the terms or from the nature of the contract.” Ibid.
The nearly unqualified heritability of rights to enforce an obligation has one notable exception — strictly personal rights. See La. C.C.P. art. 426 cmt. (b). Actions classified under this exception abate on the death of obligee. See La. C.C.P. art. 428. An obligation and, by inference, a right “is strictly personal when its performance can be enforced only by the obligee, or only against an obligor.” La. Civil Code art. 1766. When performance involves “personal services” or “requires the special skill or qualification of the obligor, the obligation is presumed to be strictly personal.” Ibid. Similarly, an obligation is also strictly personal “[w]hen the performance is intended for the benefit of the obligee exclusively.” Ibid. Except for the foregoing provisions, rights and obligations are presumed to be heritable. See La. Civil Code art. 1765.
2
But for the confirmation judgment, Ms. Montana would have acquired ownership of this property subject to her mother’s right (if any), under La. Const, art. 7, § 25, to redeem the one percent interest conveyed at tax sale.[4] See, e.g., Succession of Caldarera v. Zeno, 09-1397 (La.App. 4 Cir. 7/16/10), 43 So.3d 1080.[5] This would have included full ownership over her mother’s remaining interest (i.e., the undivided 99%) in the property not conveyed at tax sale because a judgment confirming title to property sold at tax sale may not convey a greater ownership interest in a property than that reflected in the relevant Tax Sale Deed. See La. R.S. 47:2266; 47:2121 C(l); 47:2153 B(5) (setting forth the bidding process at tax sale); 47:2154 C (setting forth the method of calculating the price at tax sale). Importantly, and contrary to Ms. Jordan’s argument, La. R.S. 47:2266 A(2) does not grant full ownership over the entirety of the property after the tax sale purchaser confirms her tax sale title in a lesser interest in the property. “Full ownership,” as granted pursuant to confirmation proceedings, changes the nature of the rights held by the tax sale *1217 purchaser, not the percentage interest held in indivisión. See La. R.S. 47:2122(22); 47:2266.
Here, Ms. Jordan purchased a one percent, undivided interest in the property as reflected in her Tax Sale Deed, but was awarded full ownership over the entirety of the property by confirmation judgment. Ms. Montana instituted an action to nullify that judgment, which conveyed ownership to Ms. Jordan over her mother’s remaining interest in the immovable property. Ms. Santiago’s right to institute this nullity action is certainly heritable, and, as the universal successor, Ms. Montana undoubtedly has the right to institute this action and a legal interest in the property that forms the basis of this litigation.
_km
We now turn to examine the trial judge’s decisions, on cross-motions for summary judgment, to grant Ms. Jordan’s motion and deny Ms. Montana’s motion. After our de novo review, we find that the trial judge was precluded from granting summary judgment in favor of either party as neither met their respective burdens of proof as movants under La. C.C.P. art. 966. Ms. Jordan failed to establish an absence of factual support for Ms. Montana’s claim that the confirmation judgment was obtained by fraud or ill practices, and Ms. Montana did not show that there is no genuine issue as to that material fact in this civil action.
A
We first address the legal precepts governing our review of a trial judge’s rulings on cross-motions for summary judgment. ‘We review a grant or denial of a motion for summary judgment de novo.” Marseilles Homeowners Condominium Ass’n, Inc. v. Broadmoor, L.L.C., 12-1233, p. 16 (La.App. 4 Cir. 2/27/13), 111 So.3d 1099, 1110 (citing Bonin v. Westport Ins. Corp., 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910). Our review utilizes “the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.” Mitchell v. Villien, 08-1470, p. 5 (La.App. 4 Cir. 8/26/09), 19 So.3d 557, 562 (citing Kennedy v. Sheriff of East Baton Rouge Parish, 05-1418, pp. 25-26 (La.7/10/06), 935 So.2d 669, 686). We examine “the facts and evidence in the record before us, inspecting it without regard or deference to the judgment of the trial court or its reasons for judgment. While a trial court’s reasoning for granting a summary judgment may 19well be informative, it is not determinative of the legal issues to be resolved by the appellate court.” Cusimano v. Port Esplanade Condominium Ass’n, Inc., 10-0477, pp. 4-5 (La.App. 4 Cir. 1/12/11), 55 So.3d 931, 934.
“The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.” La. C.C.P. art. 966 A(2). In the trial court, a “plaintiff or defendant ... may move for a summary judgment in his favor for all or part of the relief for which he has prayed.” La. C.C.P. art. 966 A(l). In support of these motions, movants may submit supporting documents in conjunction with their motions for summary judgment, including pleadings, depositions, answers to interrogatories, admissions, and supporting affidavits. See La. C.C.P. art. 966 B(2).
As this case involves cross-motions for summary judgment, we must be mindful of the burden of proof imposed on each party. See Gray v. American Nat. Prop. & Cas. Co., 07-1670, p. 6 (La.2/26/08), 977 So.2d 839, 844 (citing Duncan v. U.S.A.A. Ins. Co., 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 547) (internal punctuation omitted). A movant generally carries the burden of showing “that there is no genuine issue as to material fact” and that she is “entitled to judgment as a matter of law.” La. *1218 C.C.P. art. 966 B(2). When, however, she does not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, “the movant’s burden on the motion does not require [her] to negate all essential elements of the adverse party’s claim ..., but rather to point out to the court that there is an absence of factual support for one or more elements Inessential to the adverse party’s claim.” La. C.C.P. art. 966 C(2). A determination of whether a genuine issue of material fact exists in a civil action requires a two-part inquiry.
First, in order to determine the materiality of a fact, “a reviewing court must evaluate the substantive law that governs the litigation at issue.” Marseilles Homeowners, 12-1233 at p. 17, 111 So.3d at 1110-1111. “[A] fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Facts are material if they ‘potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.’ ” Id., 12-1233 at p. 17, 111 So.3d at 1110 (quoting Woodland Properties, L.L.C. v. New Orleans Sewerage and Water Bd., 10-0331, p. 3 (La.App. 4 Cir. 9/29/10), 49 So.3d 443, 445). “ ‘Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits.’ ” Id. (quoting Suire v. Lafayette City-Parish Consol. Gov’t, 04-1459, p. 11 (La.4/12/05), 907 So.2d 37, 48)(internal quotations omitted).
Second, to determine the genuine nature of an issue, we do not “consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Formal allegations without substance should be closely scrutinized to determine if they do reveal genuine issues of fact.” Id. (citing Windham v. Murray, 06-1275, p. 3 (La. App. 4 Cir. 5/30/07), 960 So.2d 328, 331). “[A] ‘genuine issue’ is a triable issue, that is, an issue on which reasonable persons could disagree.” Id. (citing Jones v. Estate of Santiago, 03-1424, p. 6 (La.4/14/04), 870 So.2d 1002, 1006). Thus, “[i]f on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is a means on disposing of such meretricious disputes.” Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751 (internal punctuations and citations omitted).
During our de novo review, should we discover any genuine issues, we must reverse a trial court’s decision to grant a motion for summary judgment in regards to any legal claims to which those issues are material. Summary procedure is no longer appropriate at that point. Those issues will require a credibility determination by the trier of fact at a trial on the merits.
B
We now review the specifics of the cross-motions for summary judgment by setting forth the underlying legal framework for this nullity action. A detailed examination of this cause of action properly limits the scope of our review in regards to the “genuine” nature of disputed issues by screening “immaterial” facts from our consideration.[6] We can then determine *1219 whether the remaining material facts are even disputed and whether the issues arising under those material facts are genuine.
I12I
“A final judgment obtained by fraud or ill practices may be annulled” as a relative nullity and tainted by a vice of substance. La. C.C.P. art. 2004. See Cannizzaro ex rel. State v. American Bankers Ins. Co., 12-1455, p. 10 (La.App. 4 Cir. 7/10/13), 120 So.Sd 853, 860. “The purpose of an action for nullity is to prevent injustice which cannot be corrected through new trials and appeals.” Belle Pass Terminal, Inc. v. John, Inc., 01-0149, p. 5 (La.10/16/01), 800 So.2d 762, 766.
To prevail in an action to nullify a judgment obtained by fraud or ill practices, a plaintiff must prove four material facts, the first three of which are not in dispute in these proceedings. First, Ms. Montana is seeking nullification of a previously rendered final judgment. See La. C.C.P. art. 2004 A. A final judgment is one “that determines the merits in whole or in part.” La. C.C.P. art. 1841. See also La. C.C.P. arts.1911-1915. Mr. Montana attached a copy of this signed final judgment to her motion for summary judgment as “Exhibit 3.” Second, the cause of action “must be asserted in a direct action and not raised collaterally.” Mooring Financial Corp. 4.01(E) Profit Sharing Plan v. Mitchell, 08-1250, p. 9 (La.App. 4 Cir. 6/10/09), 15 So.3d 311, 318. Ms. Montana filed her nullity action as a direct action in Civil District Court under number 13-3863. This filing was independent from the action filed by Ms. Jordan seeking confirmation judgment in Civil District Court under number 12-3842. Third, Ms. Montana brought this cause of action within one year of her discovery of the claimed fraud or ill practices. See La. | iaC.C.P. art. 2004 B. This nullity action was brought within five months of the rendering of the challenged judgment.[7] These material elements of a nullity action are undisputed, and, thus, no genuine issue arises as to their proof during summary procedure.
2
The fourth and final material element of this nullity action under La. C.C.P. art.2004, however, is disputed and requires a showing that the challenged final judgment was obtained by fraud or ill practices. “ ‘Fraud and ill practices’ is a term of art, no actual fraud or intentional wrongdoing need be involved.” Guise Sheet Metal Co., Inc. v. La Quinta Dev. Partner, L.P., 02-2515, p. 2 (La.App. 4 Cir. 5/21/03), 848 So.2d 666, 667 (citing Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983)). “[E]ven an innocent mistake that leads to an improper judgment may be grounds for nullity.” Id. Fraud and ill practices, conceptually, “is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure.... ” See Kem Search, 434 So.2d at 1070.
Not every fraud or ill practice, however, provides a ground to annul a judgment. Nullity is only an appropriate remedy when the judgment is “obtained by” fraud or ill practice. As such, a “causal relationship between the fraud or ill practice and the obtaining of the judgment” must be found. Ward v. Pennington, 523 So.2d 1286, 1289 (La.1988). See also Williamson v. Haynes Best Western of Alexandria, Inc., 06-1928 (La.11/3/06), 940 So.2d 648.
*1220 Louisiana jurisprudence sets forth a two-pronged analysis to prove that a judgment was obtained by fraud or ill practice: 1) whether the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief; and 2) whether enforcement of the judgment would be unconscionable or inequitable. See Power Marketing Direct, Inc. v. Foster, 05-2023, p. 12 (La.9/16/06), 938 So.2d 662, 670; LCR-M Ltd. P’ship v. Jim Hotard Props., L.L.C., 13-0483, p. 10 (La.App. 4 Cir. 10/9/13), 126 So.3d 668.
In reviewing this disputed material fact, we must first determine whether the supporting documents in each of these remedially-juxtaposed motions are “sufficient to resolve all material factual issues.” Smith, 93-2512 at p. 28, 639 So.2d at 752. We review the documents attached to each motion for summary judgment in light of each party’s burden of proof set forth in La. C.C.P. art. 966. Ms. Jordan must show an absence of factual support for this essential element, and Ms. Montana must establish that there is no genuine issue as to this material fact and entitlement to judgment under La. C.C.P. art. 2004 B(2). See La. C.C.P. art. 966. These rigorous burdens are set forth as gatekeepers to preclude access to summary process for parties in cases more appropriately determined by the trier of fact.
We begin by reviewing Ms. Jordan’s motion for summary judgment. As previously stated, Ms. Jordan was required to identify an absence of factual | ^support that the confirmation judgment was obtained by fraud or ill practice. See La. C.C.P. art. 966 C(2). Ms. Jordan’s motion for summary judgment is supported by very few documents and contains mostly argument. First, Ms. Jordan asserts that the property in question was blighted prior to its conveyance at tax sale. No document evidencing blight adjudication was attached to this motion, however. See La. R.S. 13:2575. Second, Ms. Jordan contends that no fraud or ill practice occurred at the contradictory hearing on December 17, 2012, claiming that the curator ad hoc presented her findings to the court and did not oppose Ms. Jordan’s confirmation of title. Ms. Jordan also asserts that the conveyance of the additional ownership interest was explained to the district judge and justified by the expenditures that Ms. Jordan made in repairing the property. Ms. Jordan, however, fails to attach a transcript of that hearing or even an affidavit setting forth what occurred at the hearing. Ms. Jordan has failed to point to “an absence of factual support” for Ms. Montana’s claim that the confirmation judgment was obtained by fraud or ill practice. The trial judge incorrectly granted Ms. Jordan’s motion for summary judgment.
We next review Ms. Montana’s motion for summary judgment. Ms. Montana was required to show in her motion for summary judgment and its supporting documents that there are no genuine issues as to whether the confirmation judgment was obtained by fraud or ill practices and that she is entitled to judgment under La. C.C.P. art. 2004. See La. C.C.P. art. 966 B(2). In her attempt to meet this burden, Ms. Montana only attaches a copy of the judgment |1fifrom the confirmation proceedings. This judgment certainly shows that a legal error occurred when the trial court granted full ownership over the entirety of the property rather than simply the one percent undivided interest that Ms. Jordan had acquired at tax sale. The judgment, however, offers little beyond this. Ms. Montana, much like Ms. Jordan, then makes numerous unsupported assertions, claiming that Ms. Jordan misrepresented her percentage interest in the property to the district court, that the Tax Sale Deed was not examined to confirm the extent of Ms. Jordan’s interest in the prop *1221 erty, and that no contradictory hearing took place on December 17, 2012. A copy of the judgment alone is insufficient to satisfy Ms. Montana’s burden in this matter as it far from establishes that Ms. Jordan’s conduct was fraudulent or constituted ill practice. The obvious legal error in the judgment, however, does raise a genuine issue as to whether fraud or ill practice occurred in obtaining the confirmation judgment. The trial judge, thus, correctly denied Ms. Montana’s motion for summary judgment.
The only relevant supporting evidence attached to either party’s motion are a copy of the Tax Sale Deed and a copy of the confirmation judgment itself. By decreeing one hundred-percent ownership to Ms. Jordan as opposed to the one-percent interest set forth in the tax-sale deed, the confirmation judgment suffices for a prima facie factual showing that it may have been obtained by an ill practice, but in itself it fails to conclusively establish Ms. Montana’s claim that the judgment was actually obtained by fraud or ill practice or that there is no genuine issue as to that material fact.
|17As a result of neither party meeting their respective burdens of proof, we conclude that, on the basis of the cross-motions filed and the supporting materials, summary judgment was unavailable to either party. A genuine issue of material fact exists as to whether this confirmation judgment was obtained by fraud or ill practices. This matter should be determined by a trier of fact at a trial on the merits.
DECREE
We reverse the trial judge’s decision to grant Ms. Jordan’s motion for summary judgment, affirm the trial judge’s decision to deny Ms. Montana’s • motion for summary judgment, and remand this matter to the trial court for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BAGNERIS, J., Concurs in the result reached.

. The proper name for a document evidencing tax sale tide is a “Tax Sale Certificate.” See La. R.S. 47:2155. The document attached as part of this motion for summary judgment, however, is labeled "Tax Sale Deed.” We proceed according to the face of the document.

. The time for filing a motion for new trial or for an appeal had expired. See La. C.C.P. arts. 1974, 2087, and 2123.

. “[I]n the context of cross-motions for summary judgment, a party may obtain appellate review of the judgment denying its motion when it appeals the judgment which granted the opposing party relief on the issue.” Bass Partnership v. Gravolet, 12-0024, p. 10 (La. App. 4 Cir. 11/21/12), 105 So.3d 224, 231 (citing Favrot v. Favrot, 10-0986, p. 2 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1102 n. 1). See also La. C.C.P. arts. 968, 2083.

. Ms. Montana briefed extensively regarding the timeliness of her redemption. Because, however, neither Ms. Santiago nor Ms. Montana filed a motion for new trial or appealed the confirmation judgment, this issue was not properly preserved for our review in this appeal.

. The heritability of this right furthers "the law’s preference that property sold for nonpayment of taxes be redeemed by the tax debtor." Smith v. Brumfield, 13-1171, p. 6 (La.App. 4 Cir. 1/15/14), 133 So.3d 70, 78 (citing Harris v. Guardian Funds, Inc., 425 So.2d 1322, 1326 (La.App. 4th Cir.1983)). See also La. R.S. 47:2242 ("Any person may redeem tax sale title to property, but the redemption shall be in the name of the tax debtor.”).

. A pertinent example of this is the timeliness of Ms. Montana’s redemption of this property. As discussed in Part II-B-2, ante, review of this issue is not proper under the present nullity action. Thus, we need not consider this extensively briefed discussion in our review of whether the trial court’s ruling on this cross-motion for summary judgment was correct, although the timeliness of the redemption under La. Const, art. 7, § 25 may be relevant should Ms. Montana prevail in her nullity action and then Ms. Jordan re-institute confirmation proceedings. See Brumfield, 13-1171 at pp. 5-8, 133 So.3d at 80.

. The confirmation judgment was rendered on December 18, 2012, and the nullity action was filed on April 23, 2013.