| | | |
|---|---|---|
| **LZM PROPERTIES, LLC** | * | NO. 2023-CA-0707 |
| **VERSUS** | * | |
| | * | **COURT OF APPEAL** |
| **PRIVATE CONNECTION** | * | |
| **PROPERTY, INC. AND JOHN** | | **FOURTH CIRCUIT** |
| **DOE** | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

CONSOLIDATED WITH:

LZM PROPERTIES, LLC

VERSUS

PRIVATE CONNECTION PROPERTY, INC.
AND JOHN DOE

CONSOLIDATED WITH:

NO. 2023-CA-0708

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-06415 C/W 2019-13274, DIVISION "M"
Honorable Paulette R. Irons, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Dale N. Atkins)

Kyle Salvador Sclafani
4130 Canal Street
New Orleans, LA 70119


        COUNSEL FOR PLAINTIFF/APPELLEE, LZM Properties, LLC


Carolyn W. Gill-Jefferson
1100 Poydras Street, Suite 2900
New Orleans, LA 70163


        COUNSEL FOR DEFENDANT/APPELLANT, Private Connection
Property, Inc.

                                              **REVERSED AND REMANDED**
                                              **APRIL 25, 2024**

DNA

TFL

RLB

This is a nullity action. Appellant, Private Connection Property, Inc. ("PCP"), seeks review of the trial court's May 1, 2023 judgment, which granted the Motion for Summary Judgment filed by LZM Properties, LLC ("LZM"), and annulled the trial court's prior, September 25, 2019 judgment rendered in favor of PCP. For the following reasons, we reverse the trial court's May 1, 2023 judgment, and we remand this matter for further proceedings consistent with this Opinion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The underlying dispute in this matter concerns a petition to quiet tax title filed by LZM against PCP. A previous suit between LZM and PCP came before this Court on appeal, and the Court provided the following summary of the relevant factual and procedural history. In June 2006, PCP, a non-profit corporation, acquired a piece of immovable property allegedly located at 4307-09 Calliope Street, New Orleans, Louisiana 70125 via cash sale from the Schorling family. *LZM Props., LLC v. Priv. Connection Prop., Inc.*, 2020-0455, pp. 1-2 (La. App. 4 Cir. 4/22/21), 318 So.3d 976, 977. Thereafter, beginning in 2007, PCP sought tax exemptions on the property. *Id.* at p. 3, 318 So.3d at 978.

1

On April 12, 2016, at a public auction, in an attempt to acquire a one-hundred percent interest in the property located at 4438 Calliope Street in New Orleans, Louisiana 70125, LZM paid the unpaid ad valorem taxes, penalties, and costs for the years 2013, 2014, and 2015 totaling $18,505.28 (as well as the ad valorem taxes for 2016 and 2017). *Id.* at p. 4, 318 So.3d at 978. According to PCP, on approximately August 8, 2016, PCP learned that the City of New Orleans erroneously changed the address on its tax bill for its property located at 4307-09 Calliope Street to 4438 Calliope Street. *Id.* at p. 4, 318 So.3d at 979. William W. Alden ("Dr. Alden"), the director and primary shareholder of PCP, wrote a letter dated August 8, 2016, to Erroll G. Williams, Assessor for the Parish of Orleans ("Assessor Williams"), seeking to correct the property address (i.e., change it from 4438 Calliope Street to 4307-09 Calliope Street). *Id.* PCP alleged that, at this time, it was unaware that LZM had purchased 4438 Calliope Street via tax sale. *Id.*

Then, on June 19, 2019, LZM filed a "Petition to Confirm and Quiet Title to Real Estate" ("Petition to Confirm Title") against PCP and sought to have the tax sale of 4438 Calliope Street confirmed at the expiration of the three-year redemptive period provided by La. R.S. 47:2228. *Id.* at pp. 4-6, 318 So.3d at 979-80. LZM attached its tax sale certificate to the Petition to Confirm Title, and the tax sale certificate identified the property at issue as 4438 Calliope Street. *Id.* at pp. 4-5, 318 So.3d at 979-80. In response, PCP filed a peremptory Exception of No Right of Action and alleged that the tax sale was an absolute nullity. *Id.* at p. 6, 318 So.3d at 980. On September 5, 2019, the trial court conducted a hearing on PCP's Exception of No Right of Action, at which PCP argued, in pertinent part, that it owned immovable property at 4307-09 Calliope Street, not 4438 Calliope Street. *Id.* at p. 6, 318 So.3d at 980. Countering, LZM argued the thumbnail legal

2

description in its tax sale certificate reflected the same legal description in PCP's act of cash sale with the Schorling family. *Id.* At the conclusion of the hearing, the trial court granted PCP's Exception of No Right of Action and dismissed LZM's Petition to Confirm Title. *Id.* at pp. 6-7, 318 So.3d at 980. On September 25, 2019, the trial court issued its written judgment. *Id.*

### LZM's Petition to Annul Judgment

LZM's present appeal is based on its December 26, 2019 Petition to Annul Judgment ("Petition to Annul") and its subsequent November 2, 2022 Motion for Summary Judgment. In its Petition to Annul, LZM again listed PCP as the defendant and contended that "[a]t the time of the hearing on its [E]xception [of No Right of Action], [PCP] had actual knowledge the Property identified as 4438 Calliope St[reet] was the same immovable property identified as 4307 Calliope St[reet]." Further, LZM argued that, in response to a public records request, it had received documents that demonstrated PCP's "repeated written representations of its' [sic] ownership of [4438 Calliope Street] to the Assessor, the Board of Review, and the Louisiana Tax Commission," which "all include the same thumbnail description included on [LZM's] tax sale deed." Accordingly, LZM asserted that these written representations directly contradicted PCP's representations to the trial court that it did not own the property described in LZM's tax sale deed. That is, LZM argued that PCP knew that the property identified as 4438 Calliope Street was the same property as 4307-09 Calliope Street. LZM contended that PCP's contentions to the trial court were "untrue and an 'ill practice,'" such that the trial court should annul its September 25, 2019 judgment, which sustained PCP's Exception of No Right of Action.

3

## LZM's Motion for Summary Judgment

Thereafter, on November 2, 2022, LZM filed its Motion for Summary Judgment. In its Motion, LZM moved the trial court to annul its September 25, 2019 judgment. In its Memorandum in Support, LZM contended that "[a] litany of fraud and ill practices have been committed by the Defendant, [PCP,] in this litigation with the intent to mislead [the trial court] and deprive [LZM] of its property rights." In particular, LZM contended that PCP misrepresented three things to the trial court: 1) that it did not own the property bearing the municipal address 4438 Calliope Street, which was the subject of LZM's tax sale certificate; 2) that the City of New Orleans made an error and inadvertently changed the municipal address of the property without its knowledge; and 3) that the property purchased by LZM at the tax sale was "across the street and around the corner" from the property owned by PCP, i.e., not the same property. Further, LZM alleged that PCP "also withheld information from [the trial court] **that the reason LZM's Tax Sale Certificate showed '4438' instead of '4307' Calliope St[reet] was because [PCP] requested the City change the address** *after* the Property had been conveyed to LZM in the subject tax sale." LZM asserted that it was because of PCP's "fraudulent misrepresentations and ill practices" that the trial court sustained PCP's exception of no right of action and dismissed LZM's Petition to Quiet Title in the September 25, 2019 judgment. In this regard, LZM pointed to the statements by PCP's former counsel at the trial court hearing that PCP did not own and had never owned the property listed in LZM's tax sale, 4438 Calliope Street. LZM also noted that after such a statement by PCP's former counsel, the trial court stated, "**I can see the tax number; I can see the description; but the address is not present. And, therefore, . . . [I am] going to grant the [Exception of] No**

4

**Right of Action.**" Additionally, as LZM noted, the trial court stated, "**If [I am] going by the address then I have to grant**" the exception.

In support of its Motion for Summary Judgment, LZM attached an October 2022 affidavit from Assessor Williams. Assessor Williams attested that PCP's property was identified and always known by the municipal address of 4438 Calliope Street until June 8, 2017, because PCP had requested to change the municipal address from 4438 Calliope Street to 4307 Calliope Street. He stated that no other property has ever been identified or known as 4438 Calliope Street. Assessor Williams also attested that in 2013, 2014, and 2015 (the years pertinent to LZM's Petition to Quiet Title), the property was known by the municipal address of 4438 Calliope Street. With Assessor Williams' affidavit were the 2013, 2014, 2015, and 2016 City of New Orleans tax bills that were addressed to PCP at 4438 Calliope Street. Additionally, in his affidavit, Assessor Williams stated that the property now known as 4307 Calliope Street describes and is the same parcel of immovable property formerly known as 4438 Calliope Street. Finally, Assessor Williams stated that PCP had never received tax exempt status relative to the ad valorem taxes assessed to the property.

LZM also attached a "Municipal Address Change Application" ("Application") dated November 4, 2015, in support of its Motion for Summary Judgment. The Application listed the owner of the property as PCP. On the Application, "Change Municipal Address" was listed as the "Type of Request." The "Reason for Request" was "erroneous address." The Application provided the current municipal address of the property as 4438 Calliope Street. Additionally, LZM attached a "Change of Address Permit" ("Permit") dated March 3, 2016. The

5

Permit listed the change of address to 4307 Calliope Street and provided the former address as 4438 Calliope Street. The Permit also listed the applicant as PCP.

Further, in support of its contention that PCP knew that 4438 Calliope Street and 4307 Calliope Street were the same when the trial court conducted the hearing on its Exception of No Right of Action, LZM attached an "Appeal to Louisiana Tax Commission" ("Appeal Form") dated November 4, 2015, regarding the assessment on PCP's property. The handwritten Appeal Form listed the taxpayer as PCP and the address as 4438 Calliope Street.

## PCP's Opposition to LZM's Motion for Summary Judgment

On November 30, 2022, PCP filed an Opposition to LZM's Motion for Summary Judgment. Therein, PCP contended that "the fact that a pleading based upon 'fraud and ill practices' is inherently fact based" demonstrates "questions of material fact and law that should defeat LZM's Motion for Summary Judgment." Further, PCP sought to counter LZM's arguments that the documents attached to its Motion for Summary Judgment proved that PCP knew that 4438 Calliope Street and 4307-09 Calliope Street were the same property. PCP argued that it used the address "4438 Calliope Street" in its Appeal Form because that was the address on documents it had received from the Board of Review, such that PCP believed it needed to use that address in its appeal. Regarding its efforts to change the address of its property from 4438 Calliope Street to 4307 Calliope Street, PCP contended that "[t]here was no claim that PCP owned 4438 Calliope [Street] - just a mistaken address used by the City (unbeknownst to PCP) from 2008 into [sic] 2016." To this end, PCP explained that "from the time of PCP's acquisition of the property until 2016, the City sent EVERY tax bill and notification to 4438 Calliope [Street]," yet "[t]he vast majority of this correspondence was returned to the City by the [United

6

States Postal Service] as undeliverable or no such address." Discussing the knowledge of PCP's former counsel about the address discrepancy and attempts to rectify it, PCP argued that "LZM's documents prove that [PCP's former counsel] had no knowledge of [PCP]'s 2015 application to correct the address, or at the very least there is a genuine issue of material fact . . . as to whether actions of [PCP] years prior to [the] representation were known by [PCP's former counsel]" at the time of the hearing on PCP's Exception of No Right of Action. PCP contended that its own actions demonstrated that it did not believe it owned 4438 Calliope Street because "[i]n every action taken by PCP relative to the property, it used 4307-09 Calliope [Street], which was the municipal address and the address in its deed." As PCP further noted, in its acquisition of the property from the Schorling family, none of the documents used the address 4438 Calliope Street. Rather, the only address therein was 4309 Calliope Street as listed in a survey of the purchased property.

PCP further argued in its Opposition that the definition of fraud or ill practices that warrants nullification of a judgment is "any improper practice or procedure which operates, even innocently, to deprive a litigant of some legal right." PCP contended that LZM's argument in support of nullity "ignore[d] that all of the 'facts' on which LZM relies are public record and could have been obtained by" LZM before the trial court rendered judgment against LZM. Listing the Appeal Form as an example, PCP argued, "[h]ad LZM obtained the public records before the hearing (that it only sought to obtain after the hearing), then it would have been able to assert whatever defense those documents allegedly provide. Its failure to assert this new defense is attributable solely to the fact that LZM chose not to gather the evidence on which it now relies." PCP argued,

7

moreover, that the documents which LZM relied on in its Motion for Summary judgment "fail[ed] to establish any fraud or ill practice on the part of PCP that deprived LZM of a legal right, even if somehow concealed by PCP." PCP "alleged it does not own 4438 Calliope [Street] - it does not, as evidenced by its deed;" and PCP "alleged the 4438 [Calliope Street] address is a mistake by the City - it is, as evidenced by the multitude of returned mail, the corrected address, and PCP's consistent use of the 4307 [Calliope Street] address."

PCP contended that "[n]othing establishes any knowledge of the disparity [between the addresses] by PCP except the unilateral actions taken by PCP to correct the mistake when discovered in 2015." Similarly, PCP argued that "[n]othing in the actions of PCP to correct the municipal address [years prior] give[s] rise to any claim that PCP misled the Court or concealed information." Finally, PCP asserted that "even if LZM's defamatory accusations are true, there is no information in any of the documents that was not available to LZM at any time, as it is all public record. LZM just [did not] do its work in preparing the case."

In support of its Opposition, PCP attached the November 30, 2022 affidavit of Dr. Alden who identified himself as the director of PCP. Dr. Alden stated that PCP purchased a piece of immovable property located at 4307-09 Calliope Street from the Schorling family on July 23, 2006. Dr. Alden also referred to previous litigation between PCP and the Schorling family that followed the 2006 sale and explained that it was "replete with references to PCP's acquisition of 4307-09 Calliope, which is what PCP purchased from the Schorlings." After the purchase, according to Dr. Alden, he never received any tax notices, delinquent tax notices, notices of tax sale, or any other tax documents or correspondence from the Assessor and/or the City of New Orleans. However, Dr. Alden explained that he

8

did not find it abnormal because he had applied for tax exempt status for the property in 2007. According to Dr. Alden, although he never received a response to the application for tax exempt status, that "was the standard practice of approved applications" at the time.

Dr. Alden attested that after PCP's purchase of the property from the Schorlings, the only address of which he was aware and used was 4307-09 Calliope Street. For example, Dr. Alden provided that when he filed an application for tax exempt status with the Orleans Parish Assessor's Office he listed the address as 4307 Calliope Street. As argued by PCP in the Opposition, Dr. Alden explained that it was not until 2015 that he learned of the City's use of 4438 Calliope Street as the address for PCP's property when he began to prepare PCP's Appeal Form and saw 4438 Calliope Street as the address on the Board of Review's documents. Dr. Alden stated that was the first time he learned of the address discrepancy and that he "took immediate steps to cure the error." Dr. Alden attested that when he ultimately received "formal approval of the address correction," he "assumed the correction had been" resolved. Dr. Alden explained that he eventually learned that all tax notices from 2008 to 2016 had been erroneously sent to PCP at 4438 Calliope Street: Dr. Alden stated that PCP never received these documents and that seventeen of the documents were returned to the Orleans Parish Assessor "as unable to deliver or no such address" according to the City's own documents.

In a supplemental opposition to LZM's Motion for Summary Judgment filed on March 31, 2023, PCP attached the March 28, 2023 affidavit of David Edward Cook ("Mr. Cook"), who stated that he attended Dr. Alden's September 26, 2022 deposition. At the deposition, according to Mr. Cook, he witnessed counsel for

9

LZM show to Dr. Alden a Notice of Judgment issued by the Administrative Bureau for Public Health, Housing, and Environmental Violations, which erroneously identified PCP as the owner of 4438 Calliope Street. Mr. Cook explained that subsequently, on November 18, 2022, he submitted a City of New Orleans Public Records Request and received responsive documents. PCP contended that these documents Mr. Cook received pertain to an administrative hearing involving the property described therein by the City as 4309 Calliope Street and 4438 Calliope Street. According to PCP, the photographs received as part of the public records request demonstrate that those are two separate and distinct properties. LZM objected to these documents, and the trial court sustained the objection.

### Hearing and Judgment on LZM's Motion for Summary Judgment

The trial court held a hearing on LZM's Motion for Summary Judgment on April 20, 2023. In orally granting LZM's Motion for Summary Judgment, the trial court stated:

> [THE COURT]: What is before me is that I was never told, never told that your client or his person went to the city and asked for the municipal address to be changed. I was never told that. I based my decision on what was presented to me, and what was presented to me I think was something that had 4307 [Calliope Street] on it but the description from . . . what I understand is the same description as 4438 [Calliope Street]. So I based my decision . . . because the evidence that was brought to me said he owned 4307 [Calliope Street] and 4438 [Calliope Street] was no where [sic].
>
> I have a problem that they knew that. They came into court. They told me that; misrepresented -- that is a nice word. But it was a lie. They knew it. And, therefore, I am going to grant [LZM's] . . . motion for summary judgment. . . .
>
> . . . .
>
> I do not think that what I did was proper because of the information that I was given. I do not have anything else to say on that.

. . . .

I really do not want to say somebody is fraud.

[COUNSEL FOR PCP]:
It cannot be fraud - -

THE COURT:
I do not want to talk about [sic]. It is annulled.

On May 1, 2023, the trial court signed a judgment in accordance with its oral ruling. The judgment stated, in pertinent part:

> **IT IS ORDERED, ADJUDGED AND DECREED**, that LZM's Motion for Summary Judgment to annul the Final Judgment of September 25, 2019 (the "Judgment") rendered by this Court sustaining the Exception of No Right of Action filed by [PCP] which dismissed LZM's Petition to Confirm and Quiet Title, be and is hereby **GRANTED** and that Judgment is annulled and set aside.

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED**, that with regard to the granting of LZM's motion, LZM be and is hereby awarded its reasonable attorney[] fees incurred in this nullity action. The amount of reasonable attorney[] fees and costs shall be determined by a contradictory hearing on a later date upon the motion of LZM.

On May 10, 2023, PCP filed a Motion for New Trial regarding the May 1, 2023 judgment. In support of its Motion for New Trial, PCP attached Mr. Cook's affidavit and sought a new trial on the basis of the administrative hearing evidence Mr. Cook received in response to his public records request. The trial court denied PCP's Motion for New Trial, and PCP timely filed its appeal with this Court.

## ASSIGNMENTS OF ERROR

In its brief to this Court, PCP asserts three assignments of error. Specifically, it contends:

> 1. The [trial] [c]ourt erred by granting the Motion for Summary Judgment as there are genuine issues of material fact regarding the allegations of fraud and ill practice.

2. An allegation of fraud is not susceptible to a determination by a Motion for Summary Judgment, as credibility of witnesses is a crucial element.

3. The [t]rial [c]ourt erred in not granting a New Trial based on the evidence of the prior Administrative Hearing.

Before addressing the merits of PCP's assignments of error, we address a preliminary matter.

## DISCUSSION

### Preliminary Matter/Jurisdiction

*Attorney Fees Awarded but Not Set in Judgment*

Before addressing the merits of an appeal, appellate courts have a duty to determine *sua sponte* whether a valid, final judgment has properly invoked their appellate jurisdiction. *Safford v. New Orleans Fire Dep't*, 2023-0495, p. 18 (La. App. 4 Cir. 2/1/24), ___ So.3d ___, ___, 2024 WL 377791, at *9 (citing *Bayer v. Starr Int'l Corp.*, 2017-0257, p. 3 (La. App. 4 Cir. 8/15/17), 226 So.3d 514, 517-18). The May 1, 2023 judgment awarded attorney fees to LZM in conjunction with the grant of LZM's Motion for Summary Judgment, but the judgment did not specify the amount and, instead, stated that it would be determined at a later date. Louisiana Code of Civil Procedure Article 2088 is titled "Divesting of jurisdiction of trial court." It states, in relevant part:

A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to do any of the following:

. . . .

12

(10) Set and tax costs, expert witness fees, and attorney fees.

La. C.C.P. art. 2088(A)(10).

In 2021, the Louisiana Legislature amended La. C.C.P. art. 2088(A)(10) to "clarif[y] that the trial court retains jurisdiction for purposes of setting attorney fees after an appeal has been taken from the initial judgment." La. C.C.P. art. 2088, Comments 2021, comment (a). This is because "[t]rial courts award reasonable attorney fees in many judgments, but often these judgments are appealed before the attorney fees are set." *Id.* Accordingly, "[w]ith this amendment, it is no longer necessary for an appellate court to dismiss an appeal in order to allow the trial court to set the amount of the attorney fees, because the trial court has jurisdiction to set attorney fees while the appeal is pending." *Id. See also Raymond v. Lasserre*, 2022-0793, pp. 13-14 (La. App. 1 Cir. 3/6/23), 368 So.3d 82, 93 (holding that the court did not have jurisdiction to grant plaintiff's request to set attorney fees incurred at the trial court and that "this request is more properly directed to the trial court"); *Benoist v. Jackson Nat'l Life Ins. Co.*, 2022-0879, p. 4 (La. App. 1 Cir. 3/1/23), 362 So.3d 957, 961 (holding that "the judgment awarding attorney fees and costs in an indefinite amount did not divest the trial court of jurisdiction to determine, after a hearing and consideration of evidence, the actual amount to be awarded as attorney fees and costs" per La. C.C.P. art. 2088(A)(10)); *Locke v. MADCON Corp.*, 2022-0630, pp. 5-6 (La. App. 1 Cir. 12/22/22), 360 So.3d 519, 523 (finding the subject "judgment to be precise, definite, and certain for purposes of constituting a valid, final judgment on appeal" even though the trial court left to be determined the costs of the proceeding because the trial court retained jurisdiction pursuant to La. C.C.P. art. 2088(A)(10) (citing *Advanced Leveling &*

*Concrete Solutions v. Lathan Co.*, 2017-3250, p. 4 (La. App. 1 Cir. 12/20/18), 268 So. 3d 1044, 1046)).

In *Raymond*, the Louisiana First Circuit Court of Appeal specifically noted that "the present version of [La.] C.C.P. art. 2088(A)(10) . . . requires the appellate court to treat a judgment as final even though it awards attorney fees but fails to set the amount of attorney fees." 2022-0793, p. 14, 368 So.3d at 93 n.6. Accordingly, the fact that the trial court's May 1, 2023 judgment did not set the amount of attorney fees to be awarded to LZM does not affect this Court's jurisdiction. As amended, La. C.C.P. art. 2088(A)(10) requires us to treat this as a final judgment even though it awards attorney fees but fails to set the amount of those fees.

### Summary Judgment Principles and Standard of Review

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id.* A trial court grants a motion for summary judgment if "[a]fter an opportunity for adequate discovery," the mover's "motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). "The party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *Lepree v. Dorsey*, 2022-0853, p. 11 (La. App. 4 Cir. 8/11/23), 370 So.3d 1191, 1199 (quoting *Lirette v. Adams*, 2022-0552, 0553, p. 19 (La. App. 4 Cir. 1/31/23), ___ So.3d ___, ___, 2023 WL 1252737, at *10). "A genuine issue is" defined as "a triable issue." *Id.* (quoting *Lirette*, 2022-0552, 0553, p. 21, ___ So.3d at ___, 2023 WL 1252737, at

14

*11). More particularly, "an issue is genuine if reasonable persons could disagree" about it. *Id.* "[I]f on the state of the evidence," however, "reasonable persons could reach only one conclusion, there is no need for a trial on that issue." *Id.* A material fact is defined as one whose "existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." *Id.* If a fact "potentially insure[s] or preclude[s] recovery, affect[s] a litigant's ultimate success, or determine[s] the outcome of the legal dispute," then it is a material one. *Id.* at pp. 12-13, 370 So.3d at 1199. A determination of "[w]hether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the case because the applicable substantive law determines materiality." *Id.* at p. 13, 370 So.3d at 1199-1200. "[I]f the movant satisfies the initial burden," of proving that there is no genuine issue of material fact, then "the burden shifts to the party opposing summary judgment to present factual support sufficient to show he [or she] will be able to satisfy the evidentiary burden at trial." *Id.* (alteration in original) (quoting *Lirette*, 2022-0552, 0553, p. 19, ___ So.3d at ___, 2023 WL 1252737, at *10). If, however, "the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966(D)(1). Once "the motion has been made and properly supported," then "the burden shift[s] from the mover to the adverse party." *Lepree*, 2022-0853, p. 12, 370 So.3d at 1199 (quoting *Lirette*, 2022-0552, 0553, p. 20, ___ So.3d at ___, 2023 WL 1252737, at *10).

After the burden shifts, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). In so doing, "[the] adverse party may not rest on the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided . . . , must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). When "considering a motion for summary judgment, the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent." *Lepree*, 2022-0853, p. 13, 370 So.3d at 1200 (quoting *Lirette*, 2022-0552, 0553, p. 21, ___ So.3d at ___, 2023 WL 1252737, at *11). If the party opposing the motion fails to establish the existence of a genuine issue for trial though, "summary judgment, if appropriate, shall be rendered against him [or her]." La. C.C.P. art. 967(B). When the party opposing the motion for summary judgment "'fails to provide factual evidence sufficient to establish that he [or she] will be able to satisfy his [or her] evidentiary burden of proof at trial, there is no genuine issue of material fact' and summary judgment is appropriate." *Lepree*, 2022-0853, p. 12, 370 So.3d at 1199 (second alteration in original) (quoting *Lirette*, 2022-0552, 0553, p. 20, ___ So.3d at ___, 2023 WL 1252737, at *10).

If a party appeals the trial court's ruling on a motion for summary judgment, the "appellate court applies the *de novo* standard of review in examining the trial court's ruling" while utilizing "the same criteria that govern the trial court's determination of whether summary judgment is appropriate." *Id.* at p. 11, 370 So.3d at 1198-99 (quoting *Lirette*, 2022-0552, 0553, p. 19, ___ So.3d at ___, 2023 WL 1252737, at *10). That is, "appellate courts ask the same questions the trial

court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.* at p. 11, 370 So.3d at 1199.

LZM's Motion for Summary Judgment sought to nullify the trial court's previous judgment on the basis of fraud or ill practices. As stated above, the applicable substantive law determines materiality on a motion for summary judgment. Accordingly, we next discuss nullity principles, particularly in relation to fraud or ill practices.

### Nullity Principles

Louisiana Code of Civil Procedure Article 2001 provides that "[t]he nullity of a final judgment may be demanded for vices of either form or substance, as provided in [La. C.C.P. arts.] 2002 through 2006." Regarding nullity actions for vices of substance, La. C.C.P. art. 2004(A) states that "[a] final judgment obtained by fraud or ill practices may be annulled." Typically, the discovery of evidence which could have been presented at the original trial will not serve as a reason to nullify a judgment; and, even if new evidence is not discovered until after a final judgment, despite due diligence, this is not a basis to nullify the judgment unless fraud was involved. *Schiff v. Pollard*, 2015-0340, p. 4 (La. App. 4 Cir. 10/7/15), 177 So.3d 719, 722 (first citing *Gladstone v. Am. Auto. Ass'n*, 419 So.2d 1219, 1223 (La. 1982); and then citing *Wright v. La. Power & Light*, 2006-1181, p. 13 (La. 3/9/07), 951 So.2d 1058, 1068); *Midland Funding, LLC v. Cady*, 47,854, p. 5 (La. App. 2 Cir. 2/27/13), 110 So.3d 656, 659.

As this Court has previously explained, the party seeking to annul a judgment based on fraud or ill practices bears the burden of proving "how [he or] she was excused or prevented from asserting [his or] her claims or defenses."

*Libertas Tax Fund I, LLC v. Taylor*, 2021-0550, p. 7 (La. App. 4 Cir. 6/16/22), 342 So.3d 1083, 1089 (citing *CA One/Pampy's v. Brown*, 2007-1377, p. 6 (La. App. 4 Cir. 4/2/08), 982 So.2d 909, 913). In particular, "[t]o prevail in an action to nullify a judgment obtained by fraud or ill practices, a plaintiff must prove four material facts." *Montana v. Jordan*, 2013-1410, p. 12 (La. App. 4 Cir. 2/26/14), 135 So.3d 1212, 1219. First, the plaintiff must demonstrate that he or she seeks to nullify a previously rendered final judgment. *Id.* The second fact a plaintiff must prove is that he or she raised the nullity in a direct action, not collaterally. *Id.* (quoting *Mooring Fin. Corp. 401(K) Profit Sharing Plan v. Mitchell*, 2008-1250, p. 9 (La. App. 4 Cir. 6/10/09), 15 So.3d 311, 318). Third, the plaintiff must show that he or she brought the cause of action within one year of discovering the fraud or ill practices. *Id.* at pp. 12-13, 135 So.3d at 1219 (citing La. C.C.P. art. 2004(B)). The fourth and final fact "requires a showing that the challenged judgment was obtained by fraud or ill practices." *Id.* at p. 13, 135 So.3d at 1219.

The first three of these facts are not in dispute in these proceedings. First, LZM sought nullification of a previously rendered final judgment, the trial court's September 25, 2019 judgment. Per La. C.C.P. art. 1841, "[a] judgment that determines the merits in whole or in part is a final judgment." LZM attached a copy of the trial court's September 25, 2019 judgment to its Motion for Summary Judgment. That judgment determined the merits of LZM's Petition to Quiet Title against PCP, so it was a final judgment according to La. C.C.P. art. 1841. *See also* La. C.C.P. arts. 1911-1915. Second, LZM asserted this nullity cause of action in a direct action, not collaterally. LZM filed its December 26, 2019 Petition to Annul as a direct action in Orleans Parish Civil District Court, and this was distinct from the prior suit between LZM and PCP. In fact, when LZM filed the Petition to

Annul, the matter was originally assigned to a different division of the trial court from the division handling LZM's Petition to Quiet Title. Third, LZM filed its December 26, 2019 Petition to Annul just over three months after the trial court rendered the September 25, 2019 judgment in PCP's favor. In its Petition to Annul, PCP contended that it did not learn about the facts forming the grounds for the allegations of fraud or ill practices until after the trial court ruled in PCP's favor. These material elements of a nullity action are undisputed in this matter, and, thus, no genuine issue arose as to their proof during the summary procedure.

The fourth and final material element of a nullity action under La. C.C.P. art. 2004, however, is disputed in this matter. As stated previously, the plaintiff in a nullity action must demonstrate that the challenged final judgment was obtained by fraud or ill practices. *Montana*, 2013-1410, p. 13, 135 So.3d at 1219. In *Belle Pass Terminal, Inc. v. Jolin, Inc.*, the Louisiana Supreme Court explained that the phrase "fraud or ill practices" as found in La. C.C.P. art. 2004 "is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure." 2001-0149, p. 5 (La. 10/16/01), 800 So.2d 762, 766 (citing *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067, 1070 (La.1983)). The phrase "is a term of art," and "no actual fraud or intentional wrongdoing need be involved." *Montana*, 2013-1410, p. 13, 135 So.3d at 1219 (quoting *Guise Sheet Metal Co., Inc. v. La Quinta Dev. Partner, L.P.*, 2002-2515, p. 2 (La. App. 4 Cir. 5/21/03), 848 So.2d 666, 667). That is, "[e]ven an innocent mistake that leads to an improper judgment may be grounds for nullity." *Id.* This is because the concept "is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure." *Id.* (quoting *Kem Search, Inc.*, 434

So.2d at 1070). Louisiana jurisprudence provides a two-pronged analysis for determining whether a trial court rendered its judgment as a result of fraud or ill practices: "1) whether the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief; and 2) whether enforcement of the judgment would be unconscionable or inequitable." *Id.* at p. 14, 135 So.3d at 1220 (first citing *Power Mktg. Direct, Inc. v. Foster*, 2005-2023, p. 12 (La. 9/6/06), 938 So.2d 662, 670; and then citing *LCR-M Ltd. P'ship v. Jim Hotard Props., L.L.C.*, 2013-0483, p. 10 (La. App. 4 Cir. 10/9/13), 126 So.3d 668, 675). With these principles in mind, we consider whether the trial court's grant of LZM's Motion for Summary Judgment was proper under the facts and circumstances of this case.

## Assignments of Error Numbers One and Two

In its first assignment of error, PCP contends that the trial court "erred by granting the Motion for Summary Judgment as there are genuine issues of material fact regarding the allegations of fraud and ill practice." Then, in its second assignment of error, PCP asserts that "[a]n allegation of fraud is not susceptible to a determination by a Motion for Summary Judgment, as credibility of witnesses is a crucial element." Because these assignments of error both relate to LZM's allegation of fraud or ill practices serving as the basis for its Motion for Summary Judgment and the trial court's grant of same, we will address these two assignments of error together.

### *Whether Summary Judgment Was Appropriate on the Basis of Fraud or Ill Practices under these Facts and Circumstances*

In its brief, LZM contends that PCP's actions sufficiently fall under the definition of fraud or ill practices as outlined by the Louisiana Supreme Court in

*Bell Pass* that La. C.C.P. art. 2004 "is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure." 2001-0149, p. 5, 800 So.2d at 766 (citing *Kem Search, Inc.*, 434 So.2d at 1070). However, LZM argued to the trial court that PCP's actions were intentional, misleading, fraudulent, and wrongdoing, not just an improper practice or procedure or an innocent mistake. Moreover, the trial court also indicated at the hearing on LZM's Motion for Summary Judgment that it believed it had been intentionally misled by PCP, stating that PCP "misrepresented" the situation and that this was "a lie." As this Court explained in *Jones v. Government Employees Insurance Co.*, "summary judgment 'is inappropriate for judicial determination of subjective facts, such as motive, intent, good faith, knowledge and malice; that calls for credibility determinations and the weighing of testimony.'" 2016-1168, p. 13 (La. App. 4 Cir. 6/14/17), 220 So.3d 915, 925 (quoting *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 2014-0323, p. 10 (La. App. 4 Cir. 10/1/14), 151 So.3d 670, 677). Similarly, "summary judgment is rarely appropriate for the disposition of issues requiring a determination of the reasonableness of acts and conduct of parties under all the facts and circumstances of a case." *Id.* at pp. 13-14, 220 So.3d at 925. *See also Petkovich v. Franklin Homes, Inc.*, 2021-0448, p. 2 (La. App. 4 Cir. 9/22/22), 349 So.3d 1042, 1046 (holding "[q]uestions surrounding credibility, . . . intent, and motive are not suitable for summary judgment").

Thus, if in ruling on a motion for summary judgment relative to a claim of fraud or ill practices, the trial court weighed evidence and made credibility determinations, the appellate court should reverse because such actions are not allowed when considering a motion for summary judgment. *Ames v. Ohle*, 2017-892, p. 1 (La. 9/29/17), 227 So.3d 260, 261 (Genovese, J., dissenting). Rather,

"[w]eighing evidence and making credibility determinations are to be addressed at a trial on the merits, not at the summary judgment stage of the proceedings." *Id.* This is because, as explained previously, in considering a motion for summary judgment, the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent. *Lepree*, 2022-0853, p. 13, 370 So.3d at 1200 (quoting *Lirette*, 2022-0552, 0553, p. 21, ___ So.3d at ___, 2023 WL 1252737, at *11). This is not to say that summary judgment is always precluded on a fraud or ill practices claim because "summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent." *Bourgeois v. Allstate Ins. Co.*, 2015-451, p. 6 (La. App. 5 Cir. 12/23/15), 182 So.3d 1177, 1180 (quoting *Smith v. Our Lady of the Lake Hosp., Inc.*, 93–2512 (La.7/5/94), 639 So.2d 730, 751).

Considering the foregoing law and jurisprudence, there is a genuine issue of material fact regarding PCP's intent that precluded summary judgment. LZM based its Motion for Summary Judgment on PCP allegedly committing fraud or ill practices by intentionally deceiving the trial court. Specifically, LZM argued that because PCP clandestinely changed the address of its property from 4438 Calliope Street to 4307-09 Calliope Street after LZM's tax sale purchase and failed to inform the trial court of same, this constituted fraud or ill practices. PCP countered that it truthfully answered that it owns and has always believed that it owns 4307-09 Calliope Street, not 4438 Calliope Street, and that its actions demonstrated this, i.e., PCP used that address in all actions relative to the property and sought to change what it ascertained to be a clerical error by the City immediately upon learning of the discrepancy. Additionally, PCP contended that it did not know

22

about the tax sale at the time it sought to change the address. In ruling for LZM, the trial court weighed evidence and made a credibility determination about PCP's belief in whether it owned 4438 Calliope Street and about whether PCP intentionally deceived the court by stating that it did not own 4438 Calliope Street. This was made clear when the trial court described PCP's actions as a misrepresentation and a lie. Such determinations are to be addressed at a trial on the merits, not at the summary judgment stage of proceedings. A determination of the intent behind PCP's failure to inform the trial court that it changed its property address hinges on questions of credibility and the weighing of evidence. Thus, in this case, the allegation of misrepresentation by omission is a question of fact which is inappropriate for summary judgment.

We hold that PCP's first and second assignments of error have merit. The trial court erred in granting LZM's Motion for Summary Judgment because there is a genuine issue of material fact regarding the allegation of fraud or ill practices. Accordingly, we reverse the trial court's May 1, 2023 judgment and remand this matter for further proceedings consistent with this Opinion.

## Assignment of Error Number Three

In its third and final assignment of error, PCP contends that the trial court "erred in not granting a New Trial based on the evidence of the prior administrative hearing" obtained by Mr. Cook. Having already concluded that the trial court erred in the May 1, 2023 judgment by granting LZM's Motion for Summary Judgment, we need not consider whether the trial court erred in denying PCP's Motion for New Trial regarding that same judgment. Therefore, we pretermit discussion of PCP's third assignment of error.

23

## CONCLUSION

For the foregoing reasons, we reverse the trial court's May 1, 2023 judgment, which granted LZM's Motion for Summary Judgment and annulled the trial court's prior, September 25, 2019 judgment in favor of PCP. We remand this matter for further proceedings consistent with this Opinion.

**REVERSED AND REMANDED**